FRANKLIN *v.* HEMPSTEAD COUNTY HUNTING CLUB.

4-9144            228 S. W. 2d 65

Opinion delivered March 27, 1950.

928

*L. L. Mitchell,* for appellant.

*W. S. Atkins,* for appellee.

HOLT, J. Appellee brought this action for partition of a forty-acre tract of land in Hempstead County. The complaint alleged that appellants, by deed January 7, 1929, conveyed to G. P. Casey and J. O. A. Bush an undivided ½ interest in the land, that appellants retained and owned the remaining ½ interest, and that later Casey conveyed his ¼ interest to appellee.

In an answer and cross-complaint, appellants interposed a general denial, claimed sole ownership of the forty-acre tract, and affirmatively pleaded laches, estoppel and limitations as a complete bar, and further that appellant, Hettie Franklin, was without mental capacity to execute the above deed.

A trial resulted in a decree for appellee. The court found that the tract was not subject to division in kind

and that it should be sold and the proceeds divided in accordance with the prayer of appellee's complaint. From the decree is this appeal.

The record reflects that on January 7, 1929, appellants executed a Quit Claim Deed to G. P. Casey and J. O. A. Bush, by which they conveyed to them for "one dollar ($1.00) and other good and valuable considerations an undivided ½ interest in the land in question." J. O. A. Bush died some time after this deed was executed by appellants. Appellee, Hunting Club, purchased G. P. Casey's ¼ interest.

For reversal, appellants say that there are "but two vital issues:" 1. "Was the instrument called a Quit Claim Deed executed January 7, 1929, a *bona fide* deed in the truest sense, with all of the purported grantors knowing what they were signing, with a full, fair and clear knowledge of its intended consequences," and for a valuable consideration? 2. "If the instrument executed January 7, 1929, was a Quit Claim Deed properly executed . . ., then, were the grantees of J. O. Bush and G. P. Casey guilty of laches," and estopped to assert any rights to the property at this late date?

The Quit Claim Deed in question is regular in form and recites a valuable consideration. It was properly acknowledged and recorded about four days after its execution. No fraud in its procurement was alleged or shown. Appellants are in the attitude of attempting to invalidate or impeach this deed which purports to have been executed, signed and acknowledged by each of them. They could do this only by clear, cogent and convincing evidence, which, after reviewing the testimony, we hold they have failed to do.

In *Stephens* v. *Keener,* 199 Ark. 1051, 137 S. W. 2d 253, we said: "Before we would be warranted in setting aside the solemn recitals in a deed, a written instrument signed and acknowledged, the *quantum* of testimony required must rise above a preponderance of the testimony. To do this the evidence must be clear, cogent and convincing. A mere preponderance is not sufficient. . . . ."

"In *Morris* v. *Cobb,* 147 Ark. 184, 190, 227 S. W. 23, this court said: 'Again, appellant is in the attitude of impeaching the deed purported to have been executed and acknowledged by him. He could only do this by clear, cogent and convincing evidence. *Bell* v. *Castleberry,* 96 Ark. 564, 132 S. W. 649; *Polk* v. *Brown,* 117 Ark. 321, 174 S. W. 562. His evidence does not meet this requirement.'

"And in the recent case of *Burns* v. *Fielder,* 197 Ark. 85, 122 S. W. 2d 160, this court said: 'The evidence necessary to impeach the solemn recitations of the deed must be clear and convincing. As was said in *Bevens* v. *Brown,* 196 Ark. 1177, 120 S. W. 2d 574, such evidence must be so clear that reasonable minds will have no doubt that such an agreement was executed. It must be so convincing that serious argument cannot be urged against it by reasonable people.' '

We further hold, after reviewing the testimony, that appellants have failed to sustain, by a preponderance thereof, their contention that Hettie Franklin was without mental capacity when she executed the deed, along with the other appellants. See *Wilson* v. *Wilson,* 212 Ark. 85, 204 S. W. 2d 878.

Appellants' contention that appellee has been guilty of laches, and further that they (appellants) have acquired title by adverse possession, can not be sustained.

It is conceded that appellants have held possession and remained on this tract of land since the execution of the deed in 1929, and for many years prior thereto. However, the preponderance of the evidence falls short of showing that appellee, in the circumstances, was guilty of laches or that appellants' holding was adverse or hostile to appellee's interest.

"The doctrine of laches which is a species of estoppel rests upon the principle that, if one maintains silence when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent. . . . Mere lapse of time before bringing suit, without change of circumstances or in the relation

of the parties, will not constitute laches. Not only must there have been unnecessary delay, but it must appear that, by reason of the delay, some change has occurred in the condition or relation of the parties to the property which would make it inequitable to enforce the claim. So long as the parties are in the same condition, a claim for land may be asserted within the time allowed by law." *Stewart* v. *Pelt,* 198 Ark. 776, 131 S. W. 2d 644.

The rule is well settled that: "The right of each to occupy the premises is one of the incidents of a tenancy in common. Neither tenant can lawfully exclude the other. The occupation of one so long as he does not exclude the other, is but the exercise of a legal right. If for any reason one does not choose to assert the right of common enjoyment, the other is not obliged to stay out." *Hamby* v. *Wall,* 48 Ark. 135, 2 S. W. 705, 3 Am. St. Rep. 218.

" 'It is . . . from the nature of the estate that a tenant in common of land, in the enjoyment of his rights, must necessarily, *prima facie,* be in possession of the whole.' Angell, Lim. 429. 'The possession, therefore, of one tenant in common is the possession of all.' " *McKneely* v. *Terry,* 61 Ark. 527, 33 S. W. 953.

"For the possession of one tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such acts that notice may be presumed." *Hardin* v. *Tucker,* 176 Ark. 225, (Headnote 2), 3 S. W. 2d 11.

There was evidence that appellee claimed an interest in the land and that appellants recognized appellee's interest. Of significance is the fact that appellants paid appellee part of the proceeds from the crops produced on the land.

The rule is well established that "retention of the possession of vendors after the execution and delivery of a deed is presumed to be in subordination of the title conveyed and the statute of limitations will not begin to run until notice of the hostility of their claim is actually given to the grantee. This rule was well stated

in the case of *City of Stuttgart* v. *John,* 85 Ark. 520, 109 S. W. 541. We do not think this presumption was overcome by a preponderance of the evidence." *Daniels* v. *Moore,* 197 Ark. 727, 125 S. W. 2d 456.

As indicated, on the whole case, finding no error, the decree is affirmed.

Justice McFADDIN, not participating.