SLIP OPINION

Cite as 2013 Ark. 415

# SUPREME COURT OF ARKANSAS

No. CV–12–1065

| | |
|---|---|
| VIRGINIA MCCREARY SKALLA<br>APPELLANT | **Opinion Delivered** October 24, 2013 |
| V. | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. CV-07-252] |
| JOSEPH F. CANEPARI<br>APPELLEE | HONORABLE DAVID N. LASER, JUDGE |
| | <u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Virginia McCreary Skalla appeals an order of the Crittenden County Circuit Court granting a motion for summary judgment filed by appellee Joseph F. Canepari. For reversal, Skalla argues that the circuit court erred in dismissing her claims that Canepari breached his fiduciary duty to her as a tenant in common and that Canepari was liable for tortious interference and deceptive trade practices. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1-2(b)(5) (2013), as this appeal presents a significant issue needing clarification or development of the law. We affirm.

I. *Facts*

Skalla, a resident of Georgia, and her uncles, Albert McCreary, a resident of Alabama, and Charles McCreary, a resident of Texas, each owned an undivided one-third interest in two tracts of farmland totaling approximately 960 acres in Crittenden County. One 640-acre tract lies north of Earle (the "North Farm"), while the second tract includes approximately



320 acres and lies south of Earle (the "South Farm"). Skalla's grandparents originally owned the 960-acre farm, and after Skalla's father, William McCreary, died when she was a minor, she inherited her father's one-third share. With Skalla, her uncles each inherited an undivided one-third interest in the North and South Farms as tenants in common. Skalla, Albert, and Charles never farmed the land but leased the farms to two groups of farmers, the Hood family and the Bramucci family. The Hoods leased the North Farm while the Bramuccis leased the South Farm.

Skalla and her uncles allegedly operated the two farms through an unwritten partnership agreement whereby Charles served as the managing partner. Throughout the 1990s, Albert allegedly told Skalla that she had a right of first refusal for his interest in the two farms, but this agreement was never reduced to writing. By 2002, the North Farm had fallen into disrepair. As a result, Charles hired George Baird to manage the North Farm per a written farm-management agreement. In 2003, Skalla sought advice from Baird about further improvements to both farms. Baird explained to Skalla that certain portions of the undulating farmland were not well-suited for farming and that, because those portions would need leveling and irrigating at great expense, she would be unwise to spend additional money on further improvements. Baird allegedly advised her to sell her one-third interest, but Skalla insisted on gathering more information for future improvements to the farms. In May 2004, Baird sent Skalla a letter outlining a preliminary estimate of $250,000, which included installing two wells and leveling portions of the farms. According to Baird, Charles did not agree with these improvements, and Baird did not submit a letter to Albert. Skalla never

SLIP OPINION

sought approval for a loan to finance the plan.

Subsequently, in 2004, Albert agreed orally to give Skalla the right of first refusal and offered to sell his one-third interest. Skalla asked Charles to join her in buying Albert's interest, but Charles declined. When Canepari learned that Albert's son, Bert McCreary, who acted as his father's power of attorney, was interested in selling the property, Canepari contacted Bert. Subsequently, on August 20, 2004, Canepari contracted to purchase Albert's one-third interest in the 960 acres for the sum of $217,600.

On September 19, 2004, Canepari wrote a letter to his real estate agent, Powell Jennings, instructing him to deliver the contract to Skalla's farm manager. Canepari's letter stated that he had no interest in being partners with other owners and that he understood that he must wait three years to sue for a partition. He claimed that he was prepared to challenge the validity of the management agreement and leases and that he was interested in farming the property himself. In order to avoid an expensive legal conflict, Canepari proposed that he take the South Farm and that Skalla and Charles could take the North Farm, but such an exchange never happened. On September 24, 2004, Skalla responded, stating that she was willing to continue the leases of the farm for the next farming cycle and offered to sell her undivided one-third interest to Canepari for $1,050 per acre. Skalla also stated that if Canepari was not interested in purchasing her interest or leasing his interest, then she was prepared to file a partition action. Skalla's attorney also reminded Canepari of his fiduciary duty as a tenant in common.

In January 2005, Skalla informed Canepari that she leased the farms to the Hoods and



the Bramuccis. As a result, Canepari entered into separate leases for his one-third interest with the Hoods and the Bramuccis, and the Hoods' attorney later informed Skalla that she had no right to lease Canepari's one-third interest without his permission. Skalla amended her leases, and the Hoods and the Bramuccis later renewed.

After Albert sold his interest to Canepari, Charles entered into a contract with Skalla, giving her a right of first refusal to purchase Charles's one-third interest and vice versa. In late 2005, Charles met Canepari and offered to sell his one-third interest in the farms. According to Canepari, he agreed to purchase Charles's interest but stated that Charles must first satisfy his right-of-first-refusal agreement with Skalla. On December 23, 2005, Charles gave Skalla thirty days to exercise her right of first refusal, and she declined to accept his offer. Subsequently, Canepari entered into a contract with Charles to purchase his one-third interest for $240,000.

On June 26, 2006, after Canepari purchased Charles's one-third interest, his counsel received a letter from Skalla's counsel, stating that Canepari prevented the McCreary Partnership from entering into seven-year-renewal leases with the Hoods and the Bramuccis. Skalla's counsel maintained that Canepari limited the lease terms to three years, prevented the partnership from implementing the long-term plan, and forced Charles to sell his one-third interest. In the letter, Skalla offered to sell her one-third interest to Canepari for $450,000 and agreed to a voluntary partition allocating the South Farm to her and the North Farm to him, plus $50,000 in damages. According to Canepari, this letter signified the first time that he had heard of any such improvement plan.



On May 29, 2007, Skalla filed a complaint, seeking a partition of the lands and damages for interference and breach of fiduciary duty. In her complaint, Skalla alleged that Canepari first purchased an undivided one-third interest from Albert and then an undivided one-third interest from Charles. Skalla further asserted that, at the time of the second purchase, Canepari owed an existing fiduciary duty to her as a cotenant, had breached his fiduciary duty, tortiously interfered with a business expectancy; and had violated the Arkansas Deceptive Trade Practices Act (ADTPA). She sought $75,000 in actual damages, punitive damages, and attorney's fees.

On June 27, 2007, Canepari responded by letter that he was amenable to partition and that Skalla could take any 320 acres of the farms. In February 2008, Skalla agreed to exchange deeds with Canepari, and on February 6, 2008, the deed transferring the North Farm to Canepari was executed. Skalla then took possession of the South Farm but did not dismiss her claims. Canepari subsequently sold the North Farm to the Hoods for $960,000 plus $12,478.08, the prorated soybean crop rent, for a total of $972,478.08. The sale concluded on April 8, 2008, when Canepari transferred title to Casa Bean, LLC, a company created by the Hoods to hold title.

In her fourth amended complaint, Skalla alleged the three claims of breach of fiduciary duty, tortious interference with a business expectancy, and violation of the ADTPA. She also sought "actual damages in an amount [in] excess of $75,000.00, for enhanced civil penalties, for punitive damages in an amount in excess of $75,000.00 and for attorney['s] fees pursuant to [Arkansas Code Annotated section] 44-88-113(f) and for all other proper relief."



However, in discovery responses and interrogatories, Skalla asserted that she was entitled to damages equal to the amount of profit that Canepari realized when he sold the North Farm. She estimated her damages to equal $502,400, or the amount of the sale of $960,000 minus $457,600, the amount that Canepari paid for his two-thirds interest in the farms.

On July 10, 2012, Canepari filed a motion for summary judgment, noting that there was no authority to support Skalla's theory of lost-profit damages. In his brief in support of the motion, Canepari argued that he was entitled to summary judgment (1) on Skalla's claim for breach of fiduciary duty because he had no duty to lease his interests or make improvements to the two farms; (2) on Skalla's claim for tortious interference because the leases were not terminated or breached by the tenants and because he had a right to refrain from leasing his interest in the two farms; (3) on Skalla's business-expectancy claim because the long-term improvement plan was not a business expectancy; and (4) on Skalla's ADTPA claim because his business practices were not consumer-oriented. In his prayer for relief, Canepari requested that the court grant summary judgment, dismiss Skalla's complaint with prejudice, and award him costs and attorney's fees.

Skalla responded to Canepari's motion for summary judgment and filed a cross-motion for partial summary judgment. In her first response, Skalla listed the exhibits supporting her motion as follows: (1) plat of property; (2) real estate contract dated August 20, 2004; (3) letter from Canepari to Jenkins; (4) letter between the parties' counsel; (5) warranty deed from Albert to Canepari; (6) warranty deed from Charles to Canepari; (7) lease agreement from Canepari to the Hoods; (8) real estate contract between Canepari and the



Hoods; (9) warranty deed from Canepari to Casa Bean; (10) deposition of Michael Hood; (11) deposition of Saul Skalla; (12) deposition of Canepari; (13) complaint; (14) deeds between Skalla and Canepari; and (15) deposition of Skalla. In her second response, she filed a brief in support, arguing first that Canepari owed a duty to her after he purchased Albert's undivided one-third interest, thereby becoming a cotenant with Charles and her. She maintained that Canepari breached that duty to her when he purchased the second one-third interest from Charles. Second, Skalla argued that *Clement v. Cates*, 49 Ark. 242, 4 S.W. 776 (1887), controlled as the rule of property in Arkansas. Third, she contended that, in purchasing the second one-third interest, Canepari interfered with her contractual relationship or business expectancy. Fourth, she made a claim of damages based on Canepari's breach of fiduciary duty. Lastly, she asserted that Canepari violated the ADTPA because he engaged in unconscionable business practices.

On September 5, 2012, the circuit court heard oral arguments on Canepari's motion for summary judgment and Skalla's motion for partial summary judgment. Subsequently, on September 28, 2012, the circuit court entered an order finding that *Clement*, *supra*, was not dispositive; that the ADTPA did not apply; and that there were no genuine issues of material fact remaining for trial. The court granted summary judgment in Canepari's favor, denied Skalla's motion for partial summary judgment, and dismissed the action with prejudice. The order was signed by the judge on September 25, 2012, and filed on September 28, 2012. Skalla filed her notice of appeal on September 27, 2012. On appeal, Skalla makes three allegations that the circuit court erred in granting summary judgment. Specifically, she

7



contends that she was entitled as a matter of law to summary judgment on the basis of Canepari's alleged breach of fiduciary duty, his tortious interference, and his alleged violation of her ADTPA claim.

## II. *Breach-of-Fiduciary-Duty Claim*

For the first point on appeal, Skalla argues that the circuit court erred in granting summary judgment on her claim for breach of fiduciary duty. Specifically, Skalla claims that, as a matter of law, Canepari owed her a fiduciary duty as a tenant in common and that he breached that fiduciary duty for three reasons: (1) by purchasing a cotenant's interest; (2) by refusing to participate in her long-term improvement plan for the two farms; and (3) by not agreeing to lease his interest in the farms for seven years.

The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Harrisburg Sch. Dist. No. 6 v. Neal*, 2011 Ark. 233, 381 S.W.3d 811. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings, but also on the affidavits

SLIP OPINION

and documents filed by the parties. *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, 400 S.W.3d 701.

A characteristic of a tenancy in common is that each tenant has the right to occupy the premises, and neither tenant can lawfully exclude the other. *Graham v. Inlow*, 302 Ark. 414, 790 S.W.2d 428 (1990); *Franklin v. Hempstead Cnty. Hunting Club*, 216 Ark. 927, 228 S.W.2d 65 (1950). The occupation of one tenant in common is deemed possession by all. *Graham*, *supra*. A tenant in common has the right to make improvements on the land without the consent of his cotenants, and, although he has no lien on the land for the value of his improvements, he will be indemnified for them, in a proceeding in equity to partition the land between himself and cotenants, either by having the part upon which the improvements are located allotted to him or by having compensation for them, if thrown into the common mass. *Welch v. Burton*, 221 Ark. 173, 252 S.W.2d 411 (1952); *Kelley v. Acker*, 216 Ark. 867, 228 S.W.2d 49 (1950); *Bowers v. Rightsell*, 173 Ark. 788, 294 S.W. 21 (1927).

Skalla cites *Clement*, *supra*, to support her argument that Canepari breached his fiduciary duty as a tenant in common. In *Clement*, appellant inherited a cotenancy with his siblings, and his father's title to the property was ultimately defective. After discovering this defect, appellant purchased a third party's outstanding, adverse title in the property in order to claim a fee-simple ownership in the property. Appellant ousted his siblings and leased the property as if he were the sole owner. Skalla cites *Clement*, *supra*, for the following proposition:



The law forbids a trustee, and all other persons occupying a fiduciary or quasi fiduciary position, from taking any personal advantage touching the thing or subject as to which such fiduciary position exists; or, as expressed by another: "Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated." If such a person acquires an interest in property as to which such a relation exists, he holds it as a trustee for the benefit of those in whose interest he was prohibited from purchasing, to the extent of the prohibition. This rule applies to tenants in common by descent with the same force and reason as it does to persons standing in a direct fiduciary relation to others; for they stand, by operation of law, in a confidential relation to each other, as to the joint property, and the duty is imposed on them to protect and secure their common interests. They have a community of interest which produces a community of duty, and imposes on each one the duty to exercise good faith to the others. Neither one can take advantage of the others by purchasing an outstanding title or incumbrance, and asserting it against them. Such an act would be inconsistent with good faith, and "against the reciprocal obligations to do nothing to the prejudice of each other's equal claims which" their relationship created.

*Id.* at 245–46, 4 S.W. at 777. We held that appellant was barred from asserting an adverse title against his siblings as cotenants. *Id.*

We agree with the circuit court that *Clement*, *supra*, does not apply to the case at bar. In her response to Canepari's motion for summary judgment, Skalla cites the *Clement* holding for the proposition that Canepari should have been prevented from purchasing Charles's interest in the farms. However, the *Clement* case stands for adverse title, and here, no such adverse title exists. Skalla's title to her one-third interest is not inherently defective, and Canepari simply purchased Albert's and Charles's one-third interests in the farms after the uncles offered to sell their respective interests to her, and she declined. Accordingly, we agree with the circuit court that *Clement*, *supra*, was not dispositive of Skalla's case.



Further, we have stated that, in matters related to an undivided share of real estate, the tenant in common has absolute dominion over his property and may dispose of it as he sees fit so long as he does not interfere with the rights of others. *O'Connor v. Patton*, 171 Ark. 626, 286 S.W. 822 (1926). Here, with regard to Skalla's argument that Canepari should have participated in her long-term improvement plan, her argument fails because Canepari was under no obligation to contribute funds to her long-term improvement plan. In fact, Canepari had no knowledge of the plan until he received the letter from Skalla's counsel in June 2006. Additionally, Skalla's claim that Canepari breached his fiduciary duty by refusing to agree to lease his interest for seven years must also fail. Canepari never interfered with Skalla's rights as a cotenant, particularly when the farm leases at issue continually remained in place. Moreover, Skalla failed to submit supporting material setting forth specific facts to support each of these claims. Based on these reasons, we hold that the circuit court properly granted summary judgment on Skalla's breach-of-fiduciary-duty claims.

### III. *Tortious-Interference Claim*

For the second point on appeal, Skalla argues that the circuit court erred in granting summary judgment on Skalla's claim for tortious interference of a business expectancy. Skalla asserts that Canepari tortiously interfered with (1) her leases with the Hoods and the Bramuccis; (2) her long-term improvement plan established with Baird; and (3) her uncles' selling their interests in the two farms to her. She further asserts that Canepari tortiously interfered by writing a letter that challenged her right to seizen.

To prove tortious interference under Arkansas law, a plaintiff must prove the following

SLIP OPINION

elements: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Crockett v. C.A.G. Invs., Inc.*, 2010 Ark. 90, 361 S.W.3d 262. Our law requires that the conduct of the defendants be at least "improper." *K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 26, 280 S.W.3d 1, 11 (2008).

In the present case, Skalla failed to prove tortious interference on her four claims because, as a matter of law, Skalla did not meet proof with proof that Canepari interfered with or acted improperly toward Skalla's alleged business expectancies. First, Skalla's claim of Canepari's interference with her lease agreements fails because the Hoods and the Bramuccis never terminated their leases and continued to farm the property throughout the litigation. Second, Skalla's claim for tortious interference with the improvement plan fails because, as a matter of law, a tenant in common has the right to make improvements on the land without the consent of his cotenants. *Graham, supra.* Some precise business expectancy or contractual relationship must be obstructed in order to commit the tort of interference with a business expectancy. *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005). Here, Skalla's proposed plan did not qualify as a sufficiently concrete business expectancy to survive summary judgment, as she never applied for the $250,000 financing loan to support the improvement plan that she devised with Baird. Further, Skalla simply chose not to pursue the improvements on her own, and she admitted that she did not tell

Canepari about her proposed long-term plan until her counsel sent Canepari's counsel a letter in June 2006.

Third, Skalla's claims that Canepari interfered with her business expectancy as a cotenant in purchasing Albert's and Charles's two one-third interests fails because both uncles did make an offer to sell to her first. With regard to Albert's interest, Skalla's claim is not supported because an oral right of first refusal on an interest in land does not comport with the statute of frauds. *Lee Wilson & Co. v. Springfield*, 230 Ark. 257, 321 S.W.2d 775 (1959). Thus, as a matter of law, Skalla cannot claim that Canepari tortiously interfered with Albert's interest. Further, with regard to Charles's interest, Charles complied with the agreement by giving Skalla thirty days to accept his offer to purchase his interest, and she refused.

Lastly, Canepari is entitled to summary judgment on Skalla's seizen argument because she has not met proof with proof that Canepari caused a termination of her right to possession of the farms throughout the litigation. The undisputed evidence shows that Skalla leased her interest, collected her rents, and was never denied access to the two farms during her cotenancy. For these reasons, we hold that the circuit court properly granted summary judgment on Skalla's tortious-interference claims.

## IV. *ADTPA Claim*

For the third point on appeal, Skalla argues, without analysis, that the circuit court erred in granting summary judgment on her claim of Canepari's violation of the ADTPA. Canepari responds that Skalla failed to produce evidence of a "deceptive consumer-oriented act or practice which is misleading in a material respect," pursuant to the ADTPA.

13

The Arkansas Deceptive Trade Practices Act provides a private right of action to "any person" who suffers actual damage or injury as a result of a violation of the Act. *See* Ark. Code Ann. § 4-88-113(f). The Act prohibits a variety of listed practices, including "[k]nowingly making a false representation as to the . . . sponsorship . . . of goods or services" and a catchall provision prohibiting "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(1), (a)(10). The elements of such a cause of action are (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act. *See* Ark. Code Ann. § 4-88-113(f). A private cause of action does not arise absent a showing of both a violation and resultant damages. *Wallis v. Ford Motor Co.*, 362 Ark. 317, 208 S.W.3d 153 (2005).

Here, Skalla's claim fails to assert that Canepari engaged in any type of consumer-oriented act or practice that caused damages. His business practices involved farming rather than consumer-oriented acts. Based on the language of section 4-88-113(f), there must be a causal connection between the violation of the ADTPA and the injury. Because Skalla simply failed to allege facts setting forth a cause of action for violation of the ADTPA, the circuit court properly granted summary judgment on Skalla's claim under the ADTPA. Thus, the circuit court properly ruled as a matter of law that the ADTPA was not applicable to the case at bar.

In sum, we conclude that Skalla failed to meet proof with proof that she sustained any damages as a result of Canepari's alleged breach of fiduciary duty, alleged tortious interference, and alleged violation of the ADTPA. Skalla, in her attempt to meet proof with

proof in the exhibits attached to her response to Canepari's motion for summary judgment, offered no evidence to support her claims of Canepari's interference with her rights and obligations as a cotenant. Thus, we hold that the circuit court properly granted summary judgment as a matter of law on Skalla's three claims. Accordingly, we affirm the circuit court's ruling.

Affirmed.

*Daggett, Donovan & Perry, PLLC*, by: *Robert J. Donovan*, for appellant.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Jason W. Early*, for appellee.