

# SUPREME COURT OF ARKANSAS

No. CV–12–261

|  |  |
|---|---|
| DAVIS TILLMAN, SPECIAL ADMINISTRATOR OF THE ESTATES OF RODNEY NICKLE TILLMAN AND REBECCA ANN TILLMAN, DECEASED<br>APPELLANT<br><br>V.<br><br>RAYTHEON COMPANY, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO RAYTHEON AIRCRAFT COMPANY; HAWKER BEECHCRAFT CORPORATION; HAWKER BEECHCRAFT, INCORPORATED; AND BEECH AIRCRAFT CORPORATION<br>APPELLEES | Opinion Delivered NOVEMBER 21, 2013<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CV2009-1677]<br><br>HONORABLE JOHN HOMER WRIGHT, JUDGE<br><br><u>AFFIRMED</u>. |

**DONALD L. CORBIN, Associate Justice**

Appellant, Davis Tillman, as special administrator of the estates of Rodney Nickle Tillman and Rebecca Ann Tillman, deceased, appeals the amended order of the Garland County Circuit Court granting summary judgment to Appellees, Raytheon Company, Hawker Beechcraft Corporation ("HBC"), Hawker Beechcraft Incorporated, and Beech Aircraft Corporation (collectively "the Beech defendants" or "Appellees"). For reversal, Appellant contends that there are genuine issues of material fact in dispute as to whether the fraud exception to the General Aviation Revitalization Act of 1994 ("GARA"), Pub. L. No. 103-298, 108 Stat. 1552 (1994) (codified at 49 U.S.C. § 40101 (2006), note), applies and as



to whether GARA's limitation period began anew by Appellees' publication of an allegedly defective flight manual. In addition, Appellant contends that GARA is unconstitutional in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. Jurisdiction of this case involving a fatal airplane crash is properly in this court, as it presents an issue of first impression for this court concerning interpretation of the federal statute, GARA. Ark. Sup. Ct. R. 1–2(b)(1) (2013). We conclude that the circuit court did not err in granting summary judgment and affirm.

The following facts are taken from the allegations in the fifth amended complaint. Appellant's decedents hired Gregory L. Secrest to fly them from Hot Springs, Arkansas, to Nashville, Tennessee, on November 24, 2008. Mr. Secrest was the owner and pilot of a 1979 Beechcraft 95 B55 Baron airplane, Serial Number TC-2198 ("the subject aircraft" or "the Beech Baron"). Mr. Secrest and his two passengers departed Hot Springs Memorial Field at approximately 9:11 a.m., and the flight proceeded under instrument flight rules because of prevailing weather conditions. During the flight, the left engine of the Beech Baron lost power, and the light twin-engine plane went into a flat spin and then crashed into a wooded area near Whites Creek, Tennessee. All persons on board, the pilot and two passengers, died as a result of injuries sustained in the crash.

Appellant filed suit in the Garland County Circuit Court on behalf of his decedents' estates alleging claims of wrongful death based on negligence and products liability. The complaint was ultimately amended several times and named numerous defendants, including the pilot, Appellees as manufacturer of the subject aircraft, as well as many other defendants



who manufactured, sold, or installed parts on the subject aircraft subsequent to its original manufacture in 1978. With respect to Appellees, the complaint alleged that they negligently designed the subject aircraft due to its propensity to engage in an unrecoverable flat spin and that Appellees misrepresented, concealed, or withheld material information from the Federal Aviation Administration ("FAA") about the flat-spin characteristic of the Beech Baron. The complaint also alleged that Appellees negligently failed to include in its revised flight manual the most current instructions on spin avoidance and control.

Appellees moved for summary judgment on the basis that Appellant's suit was barred by the 18-year statute of repose set forth in GARA. Appellant responded to the motion, contending that genuine issues of material fact existed as to the applicability of the fraud exception to GARA and to the new-part rolling provision of GARA; alternatively, Appellant responded that GARA is unconstitutional. After a hearing, the circuit court entered an amended order granting summary judgment to Appellees on the basis that Appellant's claims were barred by GARA and that neither the fraud exception or the new-part rolling provision of GARA applied. In addition, the circuit court found in its amended order that Raytheon Co., Hawker Beechcraft Inc., and Beech Aircraft Corp. were improperly named defendants as they did not design or manufacture the subject aircraft and could have no liability to Appellant even if separate defendant and Appellee HBC were liable. The amended order also dismissed with prejudice the cross-claims against the Beech defendants. Finally, the amended order contained a certificate, pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure, stating that considerations of judicial economy and fundamental fairness to the



litigants of preventing duplicate trials justified the entry of a final order with regard to the summary judgment granted to the Beech defendants.

Appellant has timely appealed the order granting summary judgment and raises three points for reversal. Appellant does not challenge the circuit court's findings that HBC was the only properly named defendant and that GARA applies here and operates to bar this suit. Rather, Appellant challenges the circuit court's findings as to the fraud exception and the new-part rolling provision of GARA. Appellant also raises a constitutional challenge to GARA.

Prior to addressing the merits of the arguments on appeal, however, a very brief review of the federal statute in question is helpful. A statute of repose proceeds on the basis that it is unfair to make someone defend an action long after a product is sold; it declares that "nobody should be liable at all after a certain amount of time has passed, and that it is unjust to allow an action to proceed after that." *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001). GARA establishes a federal statute of repose, and was enacted by Congress in 1994 to revitalize the general aviation industry by protecting manufacturers from the long tail of products-liability lawsuits arising out of accidents involving general aviation aircraft or component parts that are more than 18 years old. *See id.* at 1084 (citing H.R. Rep. No. 103–525, pt. I, at 1–4 (1994), *reprinted in* 1994 *U.S.C.C.A.N.* 1638); *see also Wright v. Bond-Air, Ltd.*, 930 F. Supp. 300 (E.D. Mich. 1996). GARA is a classic statute of repose, as it does not run from the date of injury but from what is effectively the date of the first transfer from the manufacturer. *Lyon*, 252 F.3d 1078. Unless one of GARA's four exceptions applies, or unless



the new-part rolling provision applies, GARA "supersedes any state law to the extent that such law permits a civil action . . . to be brought after the applicable limitation period." *See Wright*, 930 F. Supp. at 303 (quoting in pertinent part GARA § 2(d)).

One exception to GARA is at issue in this case, as is the rolling provision. The exception at issue here is sometimes referred to as the "fraud exception" or the "knowing misrepresentation" exception. The 18-year limitation of GARA does not apply if plaintiff pleads with specificity facts and proves that (1) the manufacturer knowingly misrepresented, concealed or withheld from the FAA required information that is material and relevant to the performance, maintenance, or operation of the allegedly defective aircraft or component part; and (2) the misrepresentation, concealment, or withholding is causally related to the harm allegedly suffered. GARA § 2(b)(1); *see Wright*, 930 F. Supp. 300. "It is not sufficient for a plaintiff to allege that the aircraft was negligently designed. The plaintiff must offer evidence that the defendant knowingly misrepresented or concealed or withheld this design defect in communications with the FAA." *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 647 (E.D. Pa. 2004).

The rolling provision at issue in this case is not a true exception, but is a rolling feature of the statute that begins a new 18-year period when a new part is installed as a replacement part. Although not a true exception, the rolling provision is nonetheless sometimes referred to as the "new-part exception." Section 2(a)(2) of GARA sets out the rolling feature and provides that the addition of "any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was



added to, the aircraft, and which is alleged to have caused such death, injury, or damage" can start a new 18-year period of repose running from the date of completion of the addition of that part to the aircraft. *See Lyon*, 252 F.3d 1078.

Turning now to our standard of review in summary-judgment cases, we note our well–settled law that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Skalla v. Canepari*, 2013 Ark. 415, ___ S.W. 3d ___. Once the moving party has established a prima facie case of entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id*. With respect to cases involving time–bars, albeit from statutes of limitation rather than statutes of repose, we note that "[u]nder Arkansas law, once it is clear from the face of the complaint that an action is barred by an applicable statute of limitations, the burden shifts to the plaintiff to prove that the limitation period was in fact tolled." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

Appellee moved for summary judgment on the basis that the subject aircraft was delivered to its first purchaser on December 21, 1978, and therefore GARA's period of repose



ran on December 21, 1996, over 12 years before the fatal accident in question. As noted, Appellant does not challenge the circuit court's findings in this regard.

As his first point for reversal, Appellant contends that the circuit court erred in granting summary judgment because a genuine issue of material fact exists with respect to whether the fraud exception to GARA applies here. The gist of Appellant's argument is that HBC withheld or concealed material information from the FAA or misled or misinformed the FAA about the propensity of the Beech Baron to enter what Appellant describes as an uncontrollable flat spin. Under GARA's fraud exception, GARA's period of repose does not apply

> if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered.

GARA § 2(b)(1).

The Supreme Court of Washington has observed that there is a split of authority as to whether "knowingly" modifies only "misrepresented" or whether it also applies to "concealed" and "withheld." *Burton v. Twin Commander Aircraft LLC*, 254 P.3d 778, 785 (Wash. 2011) (comparing *Rickert v. Mitsubishi Heavy Indus., Ltd.*, 923 F. Supp. 1453, 1456, *rev'd on other grounds on reh'g*, 929 F. Supp. 380 (D. Wyo. 1996) (holding that knowledge is a separate element that must be pled and proved with regard to misrepresentation,

concealment, or withholding), with *Butler v. Bell Helicopter Textron, Inc.*, 135 Cal. Rptr. 2d 762, 774 n.25 (Cal. Ct. App. 2003) (indicating that the knowing requirement applies only to misrepresentation)). We agree with the reasoning and conclusion of the Washington Supreme Court that, when construing GARA as a whole and with Congressional intent in mind, "[m]isrepresented," "concealed," and "withheld" together indicate that a mental state of "knowingly" applies to all of the means by which information may be kept from the FAA. *Burton*, 254 P.3d 778, 786. In addition, we agree that the requirement of knowledge extends to the nature of the information, such that a manufacturer would also have to know that the information was material and relevant. *Id.* Finally, we agree with the conclusion that GARA expressly provides that it is the claimant who must set out the facts to show that the fraud exception applies and must do so with specificity. *Id.* Accordingly, we conclude that GARA places the burden on Appellant to plead facts with specificity and to prove that the fraud exception applies.

Although Appellees argued at the hearing below that Appellant had not sufficiently pled facts to establish the fraud exception, that was not the basis of the circuit court's ruling. We do note, as did the Sixth Circuit Court of Appeals in *Crouch v. Honeywell International, Inc.*, 720 F.3d 333 (6th Cir. 2013), that Appellant's complaint clearly failed to plead sufficiently specific facts to invoke GARA's fraud exception.[1] The circuit court in this case

---

[1]Beginning with Appellant's second amended complaint, as that is the first version of the complaint appearing in the record, and concluding with the fifth amended complaint, we see the same following conclusory allegations: the Beech defendants "misrepresented, and/or concealed, and/or withheld information of the problem associated with the flat spin

SLIP OPINION



did, however, rule that "the actions which the [Appellant] alleges would invoke the fraud exception do not constitute fraud as defined and contemplated by [GARA] and would not serve to invalidate or toll the statute of repose." Thus, our review on appeal is focused on this ruling. And we are mindful that this case was decided on a motion for summary judgment rather than a motion to dismiss for inadequate pleading.

It was not until Appellant filed his response to Appellees' motion for summary judgment that we see any factually specific allegations of fraud. To his response, Appellant attached several exhibits demonstrating ongoing communications over a period of years between the FAA, the National Transportation and Safety Board ("NTSB"), and the Beech defendants about the safety of general aviation aircraft and specifically about the flat-spin characteristic of the Beech Baron. On appeal, Appellant's argument that the fraud exception applies focuses on the contention that the Beech defendants either misled the FAA or failed to report to the FAA in the following ways.

First, Appellant relies on the letter dated March 12, 1981, from HBC to the FAA, which was a response to the FAA's request for HBC to comment on a safety recommendation. Appellant maintains that HBC's response in this letter was misleading because it criticized results of the tests conducted by the United States Army on the military

---

characteristic of the aircraft" and "[t]he knowing misrepresentation, omissions, and concealment . . . are related to information that was material and relevant . . . and directly relate to the cause of the accident and [Appellant's] injuries and deaths." The Sixth Circuit Court of Appeals observed that similar allegations were conclusory and insufficient to satisfy GARA's requirement of pleading specific facts. *See Crouch*, 720 F.3d 333.



version of the Beech Baron as being due to inappropriate or unreliable flight procedures. Appellant maintains that the falsity of this response is demonstrated in HBC's own internal engineering report dated June 9, 1982, where Appellant maintains that HBC admits to following the same procedures used by the Army. The specific flight procedures at issue here are the deceleration rate of one knot per second and whether full asymmetric power was held during a stall and for how long.

Second, but also in the March 12, 1981 letter, Appellant points to HBC's statements on the Army's use of neutralized ailerons in a stall. HBC stated that such was an "improper use of ailerons [and] is contrary to accepted practices under FAA training and certification procedures, which emphasize use of the ailerons *in the stall* to maintain wings level." (Emphasis added.) Appellant maintains that this statement from HBC is false and contrary to HBC's "Safety Information" pamphlet reissued in March 1981, wherein HBC directs pilots to maintain neutral ailerons *during recovery from a spin*.

Third, but also in the March 12, 1981 letter, Appellant points to HBC's reference to statements made by Mr. Bobby Bray who conducted the spin testing on the military version of the Beech Baron. According to Appellant, Appellees misrepresented that Mr. Bray had no difficulty in recovering from a spin using the recovery methods recommended by HBC. Appellant contends that this statement was false and misleading, and points to a letter from the NTSB to HBC indicating that the NTSB had contacted Mr. Bray, who revealed, "[a]s outlined in his original statement regarding those tests, he indicated that the spin went flat,



as a result of the application of asymmetric power and that all subsequent efforts to recover were futile until in desperation he applied power in the pro-spin direction."

Fourth, and finally, Appellant points to HBC's Pilot Operating Handbook and FAA Approved Airplane Flight Manual ("POH" or "flight manual") and HBC's "Safety Information" pamphlet as withholding material information about the sufficiency of HBC's spin-recovery recommendations. Appellant argues that the Safety Information pamphlet instructs that a pilot is certain to become disoriented if an airplane flown under instrument conditions is allowed to enter a stall or spin because the pilot will not be able to reference the horizon. Yet, Appellant points out, the POH instructs a pilot to *immediately* engage in specified spin-recovery techniques, if a spin is entered inadvertently. Appellant contends that this is misleading because, according to the Safety Information pamphlet, a pilot who is flying under instrument controls will be disoriented in a spin and will not be able to immediately engage in HBC's spin-recovery techniques. Appellant argues that, per applicable federal guidelines, HBC was under a continuing duty to disclose this dilemma to the FAA under 14 C.F.R. § 21.3 and was also under a duty to disclose to the FAA the adequacy of its procedures outlined in the POH.

Appellees respond by disputing Appellant's interpretation of the March 1981 letter. Appellees contend that they criticized how *late* the Army pilot initiated recovery measures in the flight tests and how *long* asymmetric power was continued into the stall, and did not challenge the use of the industry standard–deceleration rate. Similarly, Appellees respond that it was not the *use* of neutral ailerons in general, but the *timing* of their use in the spin recovery

as opposed to the stall, that Appellees challenged in the March 1981 letter. Appellees respond further that its flight manual is consistent with its criticism of the Army flight tests and is not any evidence of misinformation or fraud. With respect to statements of Mr. Bray, Appellees respond that HBC had already supplied copies of Mr. Bray's statement to the FAA prior to the March 12, 1981 letter, thus there was no knowing misrepresentation or concealment of his statements. As for Appellant's challenge to the dilemma described in the POH and Safety Information pamphlet, Appellees respond that Appellant's challenge demonstrates a basic misunderstanding of two principles: (1) spin avoidance is ideal, and immediate action is appropriate as soon as the pilot experiences the first sign of loss of control; and (2) the laws of physics cannot be changed. Appellees maintain that by advising pilots to take immediate action because they will become disoriented without reference to the horizon is merely stating sound advice and scientific truth on the laws of physics. Finally, Appellees respond that, despite having no duty to disprove the fraud exception, HBC volunteered a plethora of evidence showing that the FAA received all required material information relevant to the stall and spin characteristics of the Beech Baron aircraft.

In reply, Appellant contends that, by arguing the facts and substance of the March 1981 letter as HBC perceives them to be, HBC has demonstrated that a genuine issue of material fact exists as to whether and to what extent this letter misled the FAA.

At first glance, Appellant's argument in reply appears meritorious, as generally speaking, fraud is a question of fact. *See, e.g.*, *Delanno, Inc. v. Peace*, 366 Ark. 542, 237 S.W.3d 81 (2006) (stating that although the question of fraudulent concealment sufficient to toll the

SLIP OPINION

statute of limitations is usually one of fact and, thus, unsuited for summary judgment, a trial court may resolve the question as a matter of law when there is no evidentiary basis for reasonable differences of opinion). However, upon review of all the information volunteered by Appellees as well as all of the exhibits attached to Appellant's response to the motion for summary judgment, it is clear that what we have in the present case is a years-long discussion occurring via letters back and forth between the Beech defendants, the FAA, and the NTSB that establish a genuine concern on the part of all those involved as to the safety of twin-engine general aviation aircraft. In reading these letters and internal documents of HBC's such as the engineering reports, the flight manual, and the Safety Information pamphlets, it is clear that both the FAA and the Beech defendants disagree at various points. But it is equally clear that despite the disagreement, there is nothing in any of the letters or internal documents to indicate a knowing misrepresentation, concealment, or withholding of material information that was causally related to the crash and subsequent deaths of Appellant's decedents. On the contrary, the letters are evidence of the Beech defendants' open and candid communications with the FAA about the safety of the flat-spin characteristic of the subject aircraft. Appellant thus falls woefully short of demonstrating any intent the Appellees knowingly misled, concealed, or withheld material and relevant required information from the FAA. Accordingly, the circuit court's finding that "the actions which the Plaintiff alleges would invoke the fraud exception do not constitute fraud as defined and contemplated by the act and would not serve to invalidate or toll the statute of repose" is affirmed.

SLIP OPINION

For his second point for reversal, Appellant contends that there is a genuine issue of material fact with regard to whether the statute of repose has been rolled by HBC's publication of an allegedly defective flight manual. As noted, the rolling feature of GARA extends the 18-year statute of repose "with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage." GARA § 2(a)(2).

Appellant argues that the original version of the POH was produced in 1976, and then supplemented in 1980, 1983, 1990, 1994, 1997, and 2002. According to Appellant, the original POH provided limited instructions with regard to spin avoidance that were based on the "best available information." Appellant points out that from 1998 to 2004, HBC issued a series of "Safety Communiques" to its authorized service centers, dealers, operators, and owners of record for all Beech Baron airplanes on the subject of spin–avoidance and spin–recovery characteristics. Appellant then points to the 2002 supplement to the POH where "[n]o [c]hange" is indicated with respect to the section related to "Handling, Serv[ice] & Maint[enance]."

Appellant thus argues that none of the information included in the Safety Communiques was published in the most recent version of the POH prior to the accident in question. Appellant maintains that a jury could easily conclude that the POH, as revised, was defective in that it did not contain the most updated warnings and instructions regarding spin avoidance and spin control, which were the alleged proximate cause of the accident at issue

SLIP OPINION

here. Appellant also argues that further evidence of Appellees' failure to provide a meaningful POH can be found in its letter to the FAA of May 31, 1991, in which Appellees discuss the results of tests that Appellees conducted relating to the effect of the installation of a V.G. Systems vortex generator on the Beech Baron planes. In that letter, Appellant points out that Appellees bring to the FAA's attention certain characteristics of the modified airplane that are not defined in the POH. Appellant also emphasizes that although Appellees stated in the letter that they were considering putting the test results of the modified airplane in a Safety Communique, such information was never included in the POH.

Appellees respond that Appellant's allegations are insufficient to invoke GARA's new-part rolling provision as a matter of law. Appellees maintain that passing up the opportunity to revise the POH within 18 years of the accident is not analogous to revising the POH in a defective way. Appellees respond that the May 31, 1991 letter concerned an after-market kit that was not manufactured by HBC; and HBC could therefore not include any information about that after-market kit in HBC's POH. Appellees also respond that Appellant is in effect raising a "failure-to-warn" argument and that the failure to warn of a newly perceived problem does not amount to the replacement of a part. Accordingly, Appellees respond that the case law uniformly holds that there must be a substantive change to the POH that is causally related to the accident in order to roll the GARA repose period and start the running of a new 18-year period.

Appellant relies primarily on *Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155 (9th Cir. 2000) to support his argument that a revised aircraft manual constitutes a new system or



other part of an aircraft so as to fall within GARA's rolling provision. Appellant's reliance on *Caldwell* is misplaced. *Caldwell* does indeed recognize that a revised FAA approved flight manual can constitute a new part of an aircraft such that GARA is rolled. However, *Caldwell* does not stand for the proposition that the complete omission of material from a flight manual triggers the rolling provision of GARA. Rather, *Caldwell* stands for the proposition that GARA's rolling provision is triggered when a manufacturer "substantively alter[s], or delete[s], a warning . . . from the manual within the last 18 years." *Id*. at 1158. According to *Caldwell*, in order for a revised flight manual to constitute a new part that triggers the rolling of the GARA period of repose, the revision must either contain wrong instructions or delete existing warnings or information. "No change," which is what Appellant argues occurred here with respect to the POH in question, is not a deletion or alteration of information that previously appeared in the manual, but is an alleged omission of information, or, in other words, a failure to warn. *See Crouch*, 720 F.3d 333 (observing that if claims for negligently failing to warn in manual revisions were not barred by GARA's period of repose, plaintiffs could artfully plead suits arising out of design defects as "failure-to-warn" claims, thereby defeating Congress's intent); *see also Lyon*, 252 F.3d 1078 (rejecting proposition that failure to warn of a newly perceived problem in revised manual is analogous to a replacement part triggering new period of repose).

Appellant's argument as to the failure to revise the POH to include a warning about the flat-spin issue is contrary to the foregoing case law and is therefore without merit. The circuit court's finding that "as a matter of law . . . the [Appellees'] failure to revise the Subject



Aircrafts's flight manual in the ways [Appellant] suggests is not a basis to invoke GARA's new part provision" is therefore affirmed.

As his final point for reversal, Appellant raises a constitutional challenge to GARA, arguing that the statute violates the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Appellant argues that GARA, by its terms, places an unreasonable and arbitrary restraint on a person's ability and right to be compensated for a loss that was proximately caused by a third party. Appellees respond that the constitutionality of GARA has been upheld, even for lawsuits involving passengers on the same airplane. *E.g.*, *Lyon*, 252 F.3d 1078 (upholding GARA as "assuredly rational," even though plaintiffs who filed actions before GARA's effective date received "special protection" while those plaintiffs who filed after GARA's effective date were time-barred). Appellees respond further that an even more recent challenge to GARA's constitutionality has failed both due-process and equal-protection challenges. In support, Appellees cite *Bianco v. Cessna Aircraft Co.*, 1 CA-CV 03-0647, 2004 WL 3185847, ¶ 65 (Ariz. Ct. App. Oct. 19, 2004) (upholding Fifth Amendment substantive due-process challenge because there is no property interest in common-law claims that are not reduced to judgment and because GARA is not arbitrary or irrational; and upholding Fifth Amendment equal-protection challenge because GARA's line-drawing is not arbitrary but strikes a reasonable balance "between the competing interests of fairly compensating accident victims and keeping the price of general aviation aircraft at an affordable level").

We are precluded from reaching Appellant's constitutional argument because the circuit court did not rule on it. Appellant raised this constitutional argument for the first time in his response to Appellees' motion for summary judgment. The abstract does not reveal that Appellant ever argued the constitutional challenge at the hearing, although Appellees very briefly defended the constitutionality at the hearing. In any event, the circuit court did not rule on this issue or mention it in the order granting summary judgment. It is Appellant's burden to obtain a ruling to preserve an issue for appeal, and the failure to do so precludes our review. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, ___ S.W.3d ___.

The circuit court specifically ruled that GARA applied and that it barred Appellant's suit, that Appellant's allegations in support of the fraud exception did not constitute fraud as defined in GARA, and that the new-part rolling provision was not triggered. The order was silent as to the constitutional claim, and we are therefore precluded from reviewing that argument on appeal. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, ___ S.W.3d ___ (stating that we do not presume rulings on constitutional challenges to statutes even when the trial court's decision enforces or applies the statute). We also note that, because the circuit court made specific findings as to the application of GARA and the inapplicability of the fraud exception and the new-part rolling provision, our recent decision in *Hardin v. Bishop*, 2013 Ark. 395, ___ S.W.3d ___, does not require that we address the constitutional argument in the absence of a specific ruling.

The circuit court's order granting summary judgment to Appellees on Appellant's claims and dismissing with prejudice the cross-claims against them is affirmed.

Affirmed.

*The Boswell Law Firm*, by: *Ted Boswell*, *Dennis J. Davis*, and *John Andrew Ellis*, for appellant.

*Rose Law Firm, A Professional Association*, by: *Patrick J. Goss*; and *Martin, Pringle, Oliver, Wallace & Bauer, L.L.P.100*, by: *William L. Oliver*, *Michael G. Jones*, and *Teresa L. Adams*, for appellees.