

# SUPREME COURT OF ARKANSAS

No. CV-13-158

| | |
|---|---|
| ARLOE DESIGNS, LLC<br>APPELLANT | Opinion Delivered January 23, 2014 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CV-11-2484] |
| ARKANSAS CAPITAL CORPORATION AND NATIONAL BANK OF ARKANSAS<br>APPELLEES | HONORABLE WENDELL L. GRIFFEN, JUDGE<br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

This appeal stems from litigation between Arloe Designs, LLC (Arloe) and Arkansas Capital Corporation (ACC) and National Bank of Arkansas (NBA). We affirm.

Arloe is an Arkansas business owned and operated by Marshal L. Jacobs. It specializes in the design, refurbishing, manufacture, and installation of aircraft interiors for small aircraft. In 2007, Jacobs put together a proposal to expand Arloe's operation to include exterior aircraft paint and servicing. In order to expand his operation, Jacobs proposed to build a 4900 square foot building at the North Little Rock Municipal Airport. In order to facilitate financing, Jacobs offered to provide a cash-equity infusion and a $100,000 bond as additional collateral.

Arloe contends that ACC and NBA were to work together in a joint venture to procure the loan for Arloe. ACC is an Arkansas nonprofit set up to secure niche funding for Arkansas Small businesses. ACC prepared a document styled "loan proposal" that did not include the requirement of the bond as collateral. This document specifically stated that it

"did not constitute a contractual commitment of ACC to make a loan on these or any other terms."

NBA sent a letter to Arloe on August 20, 2007, which stated that NBA had approved financing for the construction of the building. However, the letter stated that the approval was subject to several conditions, including the assignment of the lease from the North Little Rock Airport Commission and that the lease must be transferrable. Arloe entered into a 30-year lease for the new hangar in October, 2007. The terms of the lease prohibited the lease from being assigned.

Arloe asserts that on October 25, 2007, Jacobs was informed that NBA would not close the loan without the bond as collateral. Arloe did not give the bond as collateral, and so the loan was not closed.

Arloe filed suit against ACC and NBA, alleging that ACC's and NBA's actions were a breach of contract, violated the ADTPA, were negligent, and that Arloe had reasonably relied on the promise of NBA and ACC to its detriment. Arloe claimed damages equal to the lost profits it would have received had the loan been given and had it been able to expand its business as planned.

ACC and NBA filed motions for summary judgment, asserting that Arloe's claims failed as a matter of law because it could not prove with reasonable certainty that the expansion of its business would have made a profit, because there was no contract, that there was no actionable claim for negligence because NBA and ACC owed no duty to Arloe, and because the ADTPA did not apply. The circuit court granted NBA and ACC's motions for

SLIP OPINION

summary judgment as to all but Arloe's promissory estoppel claim, and limited damages for that claim to the money that Arloe had spent in reliance on the claimed promise. The circuit court also granted NBA and ACC's motion in limine to exclude the testimony of Steven Schroeder. Arloe had proffered the expert testimony of Steven Schroeder to show that Arloe's proposed expansion would have been profitable.

At trial, the jury found that Arloe had not proved that either NBA or ACC had made a promise to loan Arloe money. Arloe brought this timely appeal and asserts five points on appeal: (1) that the circuit court erred in granting summary judgment on Arloe's breach-of-contract claim; (2) that the circuit court erred in granting summary judgment on Arloe's negligence claim; (3) that the circuit court erred in granting summary judgment on Arloe's ADTPA claim; (4) that the circuit court erred in limiting damages on Arloe's promissory estoppel claim; and (5) that the circuit court erred in finding that Arloe's lost profit damages were barred. We have jurisdiction pursuant to Ark. Sup. Ct. R. 1–2(b)(5).

Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Tillman v. Raytheon Co.*, 2013 Ark. 474, ___ S.W.3d ___. Once the moving party has established a prima facie case of entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party

3

SLIP OPINION

against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.*

For its first point on appeal, Arloe contends that the circuit court erred in granting summary judgment on its breach–of–contract claim. Arloe asserts that ACC and NBA did breach their contract, and that there is a material question of fact that an enforceable contract existed. We disagree.

In *Williamson v. Sanofi Winthrop Pharmaceuticals, Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001), we said "it is well settled that in order to make a contract there must be a meeting of the minds on all terms, using objective indicators." This court employs an objective test for determining mutual assent. *See Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003). The proposal ACC sent to Arloe specifically states that it "IS NOT INTENDED TO AND DOES NOT CREATE A LEGALLY BINDING COMMITMENT OR OBLIGATION." Further, just above the signature line on page 8 of the proposal, it states "The undersigned understands that this letter does not constitute a contractual commitment of ACC to make a loan on these or any other terms, and any representation to the contrary is hereby expressly disclaimed." Here, the objective indicators show that ACC did not assent to an contract to lend money to Arloe. Therefore there is no question that this document did not create a legally binding contract to lend.

The circuit court found that the August 20, 2007 letter constituted evidence that NBA had approved financing for the building. However, this approval was subject to several

conditions, including that the lease be transferrable. It is uncontested that the lease Arloe entered into was not transferrable. Because an express condition of the approval was not met, there was no contract. *See Carter v. Cline*, 2011 Ark. 474, 385 S.W.3d 745.

Arloe formed no contract with either ACC or NBA, therefore the circuit court did not err in granting summary judgment against Arloe for its breach-of-contract claim.

For its second point on appeal, Arloe asserts that the circuit court erred in granting ACC and NBA's motion for summary judgment on its negligence claim. The circuit court found that ACC and NBA owed no duty of care to Arloe. The question of the duty owed to the plaintiff alleging negligence is always one of law and never one for the jury. *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 76 S.W.3d 254 (2002). If the court finds that no duty of care is owed, the negligence count is decided as a matter of law. *Id*.

Arloe contends that the issue before this court is whether a bank owes a duty to borrowers on a loan transaction. Arloe asserts that a duty can arise either from a contract or a relationship, and that the duty here arose from the parties' relationship. In order for a duty of care to exist between a bank and a potential borrower, the relationship between the bank and the borrower must be either fiduciary or special in nature, beyond a routine debtor-creditor relationship. *See Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997).

Arloe was not a borrower on a loan transaction, because no contract to lend was formed, as shown above. Arloe has also brought forward no evidence to show that there was a special or fiduciary relationship between it and either ACC or NBA. In fact, the circuit court specifically found that Arloe and ACC and NBA entered into arms-length negotiations

SLIP OPINION

for a commercial loan which did not come to fruition and that there was no evidence to indicate that there was a relationship of special trust and confidence. Therefore, the circuit court did not err in granting summary judgment against Arloe for its negligence claim.

For its third point on appeal, Arloe asserts that the circuit court erred in granting summary judgment on it's claims under the ADTPA. The circuit court ruled that the ADTPA did not apply as a matter of law. Arkansas Code Annotated section 4-88-101 (Repl. 2011) states:

> This chapter does not apply to:
>             . . .
> (3) Actions or transactions permitted under laws administered by the Insurance Commissioner, the Securities Commissioner, the State Highway Commission, the Bank Commissioner, or other regulatory body or officer acting under statutory authority of this state or the United States, unless a director of these divisions specifically requests the Attorney General to implement the powers of this chapter.

ACC is an Arkansas nonprofit and is subject to the supervision, examination, and control of the Arkansas State Bank Commissioner and the Arkansas State Board of Finance. NBA is a national bank and is regulated by the Office of the Comptroller of Currency and the Federal Deposit Insurance Commission. Because both ACC and NBA are regulated by a regulatory body acting under statutory authority of Arkansas or of the United States, their actions and transactions are not subject to claims that can be brought under the ADTPA unless a specific request has been made to the Attorney General. Arloe has not provided any evidence that such a request has been made. Therefore, we hold that the circuit court did not err in dismissing Arloe's claims under the ADTPA.

For its next point on appeal, Arloe asserts that the circuit court erred in limiting its

recovery on its promissory estoppel claim. However, this point is moot. The interrogatories given to the jury stated:

> Do you find that Arloe Designs, LLC has proven that Arkansas Capital Corporation made a promise to loan money to Arloe Designs, LLC?

and

> Do you find that Arloe Designs, LLC has proven that National Bank of Arkansas made a promise to loan money to Arloe Designs, LLC?

The jury answered no to both of these interrogatories. Because the jury found that there was no promise for Arloe to rely on to its detriment, Arloe could not have received any damages from this claim.

For its final point on appeal, Arloe asserts that the circuit court erred in ruling that its lost-profit damages were not recoverable. In general, damages recoverable for breach of contract are those damages that would place the injured party in the same position as if the contract had not been breached. *Optical Partners, Inc. v. Dang*, 2011 Ark. 156, 381 S.W.3d 46. Damages must arise from the wrongful acts of the breaching party. *Id.* Consequential damages are defined as "[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." *Id.* (quoting *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 604–05, 864 S.W.2d 817, 825 (1993)). Lost profits are recognized as a type of consequential damages. *Id.* Although recovery will not be denied merely because the amount of damages is hard to determine, damages must not be left to speculation and conjecture. *Id.*

The circuit court found that Arloe's lost-profit damages were not recoverable because

the lost profit damages were too speculative. The circuit court further found that Arloe's claims were barred by the new-business rule applied by this court in *Marvell Light & Co. v. Gen. Elec. Co.*, 162 Ark. 467, 259 S.W. 741 (1924). The new-business rule prohibits a new, never before operational business from recovering anticipated profits, as such damages are too remote, speculative, and uncertain to support a judgment for their loss. Arloe contends that the new-business rule should no longer be the law in Arkansas and asks that we overrule *Marvell*. We do not reach this point, however, as Arloe's assertions are moot.

In order for Arloe to claim lost-profit damages, it must first demonstrate that ACC and NBA committed a wrongful act. It has not done so. Summary judgment was granted as to each of Arloe's claims, leaving no cause of action to show that ACC and NBA committed a wrongful act under which Arloe can claim consequential damages.

Based on the discussion above, we hold that Arloe's claims that the circuit court erred in denying it recovery for lost profit damages and limiting its damages on its promissory-estoppel claim are moot. We affirm the circuit court's finding that summary judgment was proper in regard to Arloe's breach-of-contract, negligence, and ADTPA claims.

Affirmed.

*Eichenbaum Liles, P.A.*, by: *James H. Penick, III*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *John Keeling Baker*; and *Foland, Wickens, Eisfelder, Roper & Hofer, P.C.*, by: *David W. White* and *Abbigale A. Gentle*, Pro Hac Vice, for appellee Arkansas Capital Corporation.

*Davidson Law Firm*, by: *Stephen L. Gershner* and *Charles Darwin "Skip" Davidson*, for appellee National Bank of Arkansas.