Cite as 2020 Ark. App. 396

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-19-831

| | |
|---|---|
| BARBARA WOODRUFF<br><br>APPELLANT<br><br>V.<br><br>WESTERN SIZZLIN OF RUSSELLVILLE, INC.<br><br>APPELLEE | **Opinion Delivered:** September 16, 2020<br><br>APPEAL FROM THE POPE COUNTY CIRCUIT COURT<br>[NO. 58CV-18-487]<br><br>HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE<br><br>REVERSED AND REMANDED |

**RITA W. GRUBER, Chief Judge**

Appellant Barbara Woodruff appeals from an order of the Pope County Circuit Court granting summary judgment to appellee Western Sizzlin of Russellville, Inc., and dismissing her complaint for negligence. We hold that summary judgment was inappropriate at this juncture, and we reverse and remand.

On September 1, 2017, Ms. Woodruff was injured when she fell at Western Sizzlin while walking from the salad bar to her table. She sued Western Sizzlin for negligence, alleging that it had failed to make the premises reasonably safe; failed to maintain the premises in a reasonably safe condition; failed to properly train and supervise its employees in the proper maintenance of the premises; failed to warn her that there was a foreign substance on the floor; and failed to exercise ordinary care under the circumstances. Specifically, Ms. Woodruff contended that she had slipped and fallen on a foreign substance that appeared to be melted ice cream.

In deposition testimony, Ms. Woodruff's companion at the restaurant, Sharon McCain, testified that she and Ms. Woodruff noticed when they entered the restaurant that there was "a mess everywhere" and that it was the "worst [she had] ever seen" at Western Sizzlin. Ms. Woodruff stated in deposition testimony that she had noticed the floor was wet when she walked from her table to the salad bar. In one part of her deposition she said she walked around the wet spot; she later testified that she had walked through the wet spot on her way to the salad bar. She said that on the way back to her table, she slipped in the same area where she had seen the wet spot. After she fell, she noticed there was hamburger and ice cream on the floor where she had fallen.

Western Sizzlin filed a motion for summary judgment claiming that Ms. Woodruff saw the substance on the floor before she fell and had walked around it to be careful; that it had no duty to warn of dangers that are open and obvious; and that it was thus entitled to judgment as a matter of law. The circuit court agreed and granted Western Sizzlin's motion, dismissing Ms. Woodruff's complaint.

On appeal, Ms. Woodruff argues that the circuit court erred in not viewing the evidence in the light most favorable to her, contending that defense counsel prevailed on the motion by citing specific parts of her testimony and ignoring other parts; blurring the contrast between her knowledge before her fall and after; and failing to focus on where she fell—the tile or the carpet. We agree that a genuine issue of material fact remains and therefore reverse and remand for further proceedings.

Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as

2

a matter of law. *Tillman v. Raytheon Co.*, 2013 Ark. 474, 430 S.W.3d 698. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is not proper where the evidence reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, 536 S.W.3d 635.

Because the underlying cause of action is based in negligence, the existence of a duty of care is crucial. Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Yanmar Co. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439. The question of what duty is owed is one of law that we review de novo. *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, 470 S.W.3d 293. If the court finds that no duty of care is owed, the negligence count is decided as a matter of law. *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 76 S.W.3d 254 (2002).

A premises owner owes a duty to an invitee to use ordinary care to maintain the premises in a reasonably safe condition. *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 384, 101 S.W.3d 881, 884 (2003). The basis for a premises owner's liability under this rule is the superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of

3

ordinary care, does not or should not know. *Jenkins v. Hestand's Grocery, Inc.,* 320 Ark. 485, 898 S.W.2d 30 (1995). No such duty exists if the condition of the premises that creates the danger was known by or obvious to the invitee. *Van DeVeer*, 81 Ark. App. at 384, 101 S.W.3d at 884. The duty to warn an invitee of a dangerous condition applies only to defects or conditions that are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are known to the invitor but not known to the invitee and would not be observed by the latter in the exercise of ordinary care. *Shook*, 2017 Ark. App. 666, at 3–4, 536 S.W.3d at 637–38.

The circuit court's entry of summary judgment was premised on the conclusion that the substance Ms. Woodruff slipped on was an open and obvious danger. Ms. Woodruff argues that there is a genuine issue of material fact whether she saw and appreciated the danger of the substance that caused her fall—i.e., melted ice cream and hamburger. A dangerous condition is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 885. "Known" means "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Id.* at 386, 101 S.W.3d at 884. The following are excerpts from Ms. Woodruff's deposition:

> Q: Now, as you're walking from your table to that salad bar, did you walk over the spot, the location where you would later fall down?
>
> A: Yes.
>
> Q: Okay. When you walked from the table to that salad bar, was there any food in the floor at that location where you fell later?

4

A: Yes.

Q: What was in the floor?

A: To me, it looked like ice cream.

Q: All right. And so that I'm perfectly clear, you walked and saw the ice cream before you got to the salad bar to get your food there, correct?

A: Well, I didn't see the ice cream at that time whenever I – but I could tell the floor was wet. But when I fell, you could tell that it was more than just water.

Q: Okay. Again, let me – I just want to ask it so that I'm perfectly clear and we're both saying what we mean to say. So when you go to the table and you grab your plate and you walk from the table to the salad bar and you walked past the location where you would a few minutes later fall, that location was wet at that time?

A: Yes.

Q: Did you walk over that? I mean, did you walk through that spot where you fell, that wet spot where you fell?

A: No.

Q: Okay. Did you walk around it?

A: I walked around it.

Q: All right. So you go to the salad bar, you get your food?

A: Yes.

Q: Do you walk that same path back to the table?

A: And I forgot about the – it being wet there.

. . .

Q: . . . Was the hamburger and ice cream in the floor when you walked from your table to the salad bar?

A: Well, I assume it was because I don't know who could have dropped it before then.

5

Q: Okay. Did you actually – actually see hamburger or ice cream in the floor when you walked from your table to the salad bar?

A: No.

Q: Okay. When you say that that floor was wet, was it – was there – was it actually like water or some liquid standing in the floor?

A: No, it wasn't standing, but you could tell that it was something on the floor.

 . . .

Q: Okay. Where was that wet spot, was it on the tile or was it on the carpet?

A: It was on the carpet.

Q: Okay. Where -- so you walked around that, went to the salad bar and you come back and you said that you see hamburger and possibly ice cream?

A: Yes.

Q: Where was the hamburger and ice cream?

A: In the floor.

Q: What floor, was it the carpeted floor or was it the tile floor?

A: The carpeted floor.

Q: All right. And where was this -- this location on the carpet where these – was it the same – was the hamburger and ice cream at the same spot as the wet spot was?

A: Just about, yeah.

. . .

Q: All right. Did you begin falling when you were on the tile or on the carpet?

A: I guess it was on the tile. I ain't been out there in a long time. I forgot, but I think it's the tile. I just know that it was -- was slick, I know that much.

Q: Did you walk through the hamburger and ice cream?

6

A: Yes, I guess I did.

Q: Okay. And you saw the hamburger and ice cream before you walked through it?

A: No, I didn't.

Q: Okay. Then how did you know it was hamburger and ice cream?

A: Well, after I fell I knowed it was. You're laying right there looking at it.

. . .

Q: All right. And was there -- was there actual -- could you see water standing on the carpet?

A: No.

Q: You just noticed it was wet?

A: Right.

. . .

Q: And you walked around that wet spot going to the buffet?

A: No, I didn't - I don't -- I don't remember. I think I went walked through it because there wasn't nowhere else to walk.

Q: Okay. All right. So you walked through the wet spot, went to the salad bar.

A: Yes.

Q: -- came back and --

A: And then I fell down then when I come back.

Q: And as you're walking from the table to the salad bar, you testified that you did not see hamburger or ice cream on the tile floor, correct?

A: Yes.

Q: All right. How long did it take you to get your food and then make your way walking back to your table?

A: For me to get my salad, maybe ten minutes.

Q: Okay. And by the time you got back there was hamburger and ice cream in the -- on the tile floor, correct?

A: I assume it was there before I went up to get my stuff.

Q: Okay. Why - why do you assume that?

A: Because, I mean -- because it was wet, I mean, it showed to be wet when I walked up there.

Q: Let me -- let me clarify so that maybe I'm misunderstanding. I'm thinking that there are two spots, you've got the carpet that's wet and then the ice cream and the hamburger is in a different location on the tile floor, am I wrong in my understanding in that?

A: It was -- it was on the carpet and the tile right there.

Q: Which was?

A: Ice cream and hamburger looking, it was some kind of meat.

Q: Okay. Was it in the same location as the water that you saw standing on the carpet?

A: I didn't see no water standing, it was ice cream. Or something sticky.

Q: Was that ice cream and hamburger in the same –

A: Yes.

Q: -- as the wet spot on the carpet?

A: Yes.

Q: All right. It was all in that same –

A: Yes.

Q: -- two foot area; is that correct?

A: Yes.

Q: And you walked through that spot as you went to the salad bar, correct?

A: Yes.

Q: And you came back and you walked through that spot again to get your table, correct?

A: Yes.

It is clear Ms. Woodruff's deposition testimony does not definitively establish that she saw the substance that caused her to slip and fall. She testified that she noticed the carpet was wet when she walked to the salad bar before she fell. She specifically said that she did not see standing water or notice any ice cream, hamburger, or other potentially slick substance. To come within the open and obvious exception, Ms. Woodruff not only must have known of the existence of the condition—here a potentially slick foreign substance on the floor—but also must have recognized the danger. Knowledge that the carpet was wet is not the equivalent of knowing melted ice cream and hamburger are on the floor. Summary judgment is not proper when it is necessary to weigh the credibility of statements to resolve an issue. *Wade v. Bartley*, 2020 Ark. App. 136, at 9, 596 S.W.3d 555, 561. We must view the evidence in the light most favorable to Ms. Woodruff at this stage, resolving all doubts and inferences against Western Sizzlin. On the record before us, we cannot say that Western Sizzlin proved as a matter of law that the danger presented in this case was open and obvious.

Reversed and remanded.

VAUGHT and MURPHY, JJ., agree.

*Taylor King Law*, by: *Russell D. Marlin*, for appellant.

*Gill Ragon Owen, P.A.*, by: *Jason A. Lee* and *Drew Benham*, for appellee.