Cite as 2025 Ark. App. 254

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-24-58

| | |
|---|---|
| HILMA GISELA MEJIA<br>APPELLANT<br><br>V.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY<br>APPELLEE | Opinion Delivered April 23, 2025<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CV-23-2241]<br><br>HONORABLE XOLLIE DUNCAN, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Hilma Gisela Mejia appeals a Benton County Circuit Court order granting summary judgment in favor of State Farm Mutual Automobile Insurance Company. On appeal, Mejia claims (1) that there are genuine issues of material of fact left to be decided, thereby precluding summary judgment and (2) that the circuit court erred as a matter of law in concluding that a claim is "paid" when a check is mailed by the insurance company and not when the check is received by the insured. We affirm.

The facts in this case are fairly simple. On December 18, 2022, Mejia's son, MC, was injured in an automobile accident. At the time of the accident, MC was a passenger in a

vehicle driven by MC1[1] and owned by MC1's parents. MC1's vehicle, which was insured by State Farm, included a provision providing $5,000 in no-fault medical coverage.

In January 2023, State Farm paid a portion of MC's medical bills under its no-fault provision when it issued a $2,129 check to Mercy Hospital Northwest Arkansas. On July 19, 2023, Mejia submitted a demand to State Farm for reimbursement of MC's remaining healthcare charges. Her demand letter included copies of MC's medical records and $6,067.39 in related medical bills.

On August 23, 2023, Mejia filed suit against State Farm,[2] claiming that payment had not been received within thirty days of her demand as required by statute[3] and seeking not only recovery of medical benefits but also attorney's fees, pre- and postjudgment interest, and a 12 percent statutory penalty.[4]

---

[1]The relationship between MC and MC1, if any, is unknown.

[2]Arkansas Code Annotated section 23-89-208(e) (Repl. 2014) provides that "[i]n the event the insurer fails to pay the benefits when due, the person entitled to the benefits may bring an action in contract to recover them."

[3]Arkansas Code Annotated section 23-89-208(b) states that benefits are overdue if not "paid" within thirty (30) days after the insurer receives "reasonable proof of the amount of all benefits accruing during that period."

[4]Arkansas Code Annotated section 23-89-208(f) provides that "[i]n the event the insurer is required by the action to pay the overdue benefits, the insurer shall, in addition to the benefits received, be required to pay the reasonable attorney's fees incurred by the other party, plus twelve percent (12%) penalty, plus interest thereon from the date these sums became overdue."

State Farm answered the complaint denying that it had breached its statutory duty and claiming that it had issued a timely payment within thirty days of receiving Mejia's demand for medical-payment coverage. It also filed a motion for summary judgment arguing the same.

In support of its motion, State Farm attached an affidavit by the claims specialist handling the Mejia claim for medical benefits, Nydia Collins.[5] Ms. Collins declared that, on August 16, 2023, State Farm had issued—and mailed—a $2,872 check to Mejia, as parent and natural guardian of MC, a minor. This check represented the balance of medical-payment benefits available after payment of the Mercy Hospital Northwest Arkansas claims in January 2023. She stated that, after this last payment to Mejia, the $5,000 medical-payment coverage limits were exhausted.

State Farm claimed that it satisfied its duty to Mejia when it issued and mailed the claims check within the thirty-day statutory time frame. State Farm's position was based on both statutory interpretation and legislative and judicial guidance from other states. In support of its argument, State Farm further noted that insurance regulations speak in terms of the mailing or delivery of claim checks. It also argued that adoption of the mailbox rule in these situations would produce uniform, predictable results. To hold otherwise would be to punish insurers for the actions of parties outside their control.

---

[5]State Farm also attached Mejia's July 19 demand letter and a copy of Insurance Department Regulation 43.

Mejia responded that summary judgment was inappropriate because there were genuine issues of material fact left to be decided and because State Farm incorrectly interpreted the payment statute. As for the alleged factual dispute, Mejia challenged State Farm's claim that it had timely mailed the payment, which was not received until August 25, 2023. Mejia contended that the claim file indicated that, on August 16, State Farm conducted "medical bill research"; sent the file for review; and processed her claim. She then highlighted the fact that on August 21—three days after the deadline—State Farm sent correspondence to her counsel and suggested that the check was actually mailed on that date.[6] In making this argument, she asked the circuit court to take judicial notice that four business days is a typical amount of time for mail to be delivered from Atlanta, where the check was apparently mailed. Moreover, she asserted that, in the summary-judgment context, the circuit court could not make credibility determinations regarding the discrepancies between Ms. Collins's "self-serving" affidavit and State Farm's claim file.

As for State Farm's statutory-construction argument, Mejia asserted that it was the legislature's intent to encourage the prompt payment of no-fault insurance claims and that allowing the insurer to write a check but not actually deliver it within the statutory thirty-day

___

[6]She did not include the correspondence nor did she provide an affidavit from her counsel regarding its content. The claim file showed that correspondence was emailed to the Swindle Law Firm on August 21, 2023, and noted "CONTACT CHANGE OF CLAIM HANDLER." Mejia's counsel did attach an affidavit to her response to the summary-judgment motion declaring that payment was received on August 25, 2023. She also attached the envelope in which payment was sent. The envelope in which the claims check was mailed was not postmarked and listed a return address in Atlanta, Georgia.

deadline would be contrary to that legislative intent. She argued that if the legislature had intended the statutory payment obligation to be satisfied by mailing, it could have explicitly said so; it did not. She further claimed that the word "paid" necessarily contemplates a delivery of payment and that a different interpretation would lead to absurd results. Moreover, she asserted that the mailbox rule championed by State Farm applies only to the acceptance of a contract, not the performance of it.

As for State Farm's reliance on the insurance regulations' concept of payment, she argued that those regulations were related to unfair claims practices, and her claim was one for breach of contract. As for its reliance on other jurisdictions, she argued that the cases were distinguishable. For example, she noted that the Louisiana cases involved bad-faith claims, not breach-of-contract claims. She also noted that Arkansas's statute, unlike those of the other jurisdictions, had been written in the past tense— "paid"—and thus was focused on the completion of the process, not the initiation of the process.

Mejia then filed a countermotion for summary judgment, claiming that the check was not mailed until August 21 and thus was late even when mailed.[7]

State Farm filed a combined response to Mejia's motion for summary judgment and reply to her response to its original motion. In it, State Farm attached a copy of the check issued on August 16 and copies of the correspondence informing counsel of a reassignment

---

[7]In support of her motion, she attached the July 19 email submitting her claim to State Farm and the September 11 payment log noting that the $5,000 limits of the policy had been applied with a payment date of August 16, 2023.

5

of the claim's handler on the file. Neither letter mentioned the payment of the claim or the issuance of a check. State Farm noted that Mejia's counsel had copies of these letters when he filed his prior motions yet failed to include them and had attempted to manufacture a disputed issue of fact by insinuating that those letters involved the issuance of the claims checks when they did not. State Farm then reiterated its arguments previously made in its motion for summary judgment.

Mejia replied that there was nothing in the claim file showing that the check was mailed on August 16 and noted that the letters submitted by State Farm referenced MC1's claim, not MC's.[8] She also complained that the envelope in which the check was mailed was not stamped but was rather sent presorted first-class postage paid, thereby making it impossible to determine when the check was actually mailed.

On December 6, 2023, the court entered an order granting State Farm's motion for summary judgment and dismissing Mejia's case with prejudice.[9] Mejia appeals the court's order granting summary judgment.

On appeal, the parties put forward the same arguments they made below, with Mejia arguing (1) that there are genuine issues of material fact left to be decided, thereby subverting

---

[8]MC's counsel is also counsel for MC1, the driver.

[9]Mejia subsequently filed a posttrial motion requesting findings of fact and conclusions of law under Arkansas Rule of Civil Procedure 52. State Farm responded that Rule 52 does not apply to rulings on motions; it applies only after bench trials. The circuit court found that its previous order complied with the rules and denied Mejia's motion. Mejia does not challenge on appeal the circuit court's findings in this regard.

summary judgment and (2) that the circuit court erred as a matter of law in concluding that a claim is "paid" when a check is mailed by the insurance company and not when the check is received by the insured. We disagree.

It is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Tillman v. Raytheon Co.*, 2013 Ark. 474, 430 S.W.3d 698; *Skalla v. Canepari*, 2013 Ark. 415, 430 S.W.3d 72. In making this determination, we view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Tillman*, *supra*. Our review focuses not only on the pleadings but also on the affidavits and documents filed by the parties. *Id.* Once the moving party has established a prima facie case of entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Skala*, *supra*. In meeting proof with proof, "speculation and conjecture are not sufficiently definite or precise to prove a genuine issue of material fact." *Jade Prop. Holdings, LLC v. First Serv. Bank*, 2024 Ark. App. 414, at 5, 699 S.W.3d 136, 141 (quoting *Manley v. Zigras*, 2024 Ark. App. 168, at 3, 686 S.W.3d 561, 565).

As for the question of whether there were disputed issues of material fact, we conclude that summary judgment was appropriate because Mejia failed to meet proof with proof. State Farm submitted the affidavit of claims specialist Nydia Collins. She declared that State Farm had issued and mailed a check to Mejia's counsel on August 16, 2023. Mejia's counsel attempted to contradict her claims by highlighting claim-file notations

7

indicating that letters were not sent to counsel until August 21, after the thirty-day deadline. In response, State Farm provided copies of the letters referred to in the claim file, and those letters were not related to the payment of the claims. Mejia also noted that the envelope in which the check was mailed lacked a postage stamp. Mejia's bare assertions, however, are insufficient to contradict Collins's sworn affidavit stating that the check, which was dated August 16, was mailed that same date. Thus, there were no genuine issues of material fact remaining.

This leaves the issue of what constitutes payment for purposes of the statute. Arkansas Code Annotated section 23-89-208(b) provides:

> (b) Benefits for any period are overdue if not paid within thirty (30) days after the insurer received reasonable proof of the amount of all benefits accruing during that period.

Mejia contends the word "paid" is synonymous with receipt; State Farm contends it means mailed. Because Arkansas appellate courts have not interpreted the language in this statute, we first turn to the rules of statutory construction in deciding this issue.

We review issues of statutory interpretation de novo because it is for an appellate court to determine the meaning of a statute. *Holladay v. Glass*, 2017 Ark. App. 595, 534 S.W.3d 173. We are not bound by the circuit court's determination on statutory interpretation. *Magness v. Graddy*, 2021 Ark. App. 119, 619 S.W.3d 878. The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.* When the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Id.* We construe a statute just as it reads, giving the

8

words their ordinary and usually accepted meaning in common language. *Piper v. Potlatch Fed. Credit Union*, 2009 Ark. App. 701, 371 S.W.3d 704. We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Id.* We strive to reconcile statutory provisions relating to the same subject to make them consistent, harmonious, and sensible. *Garrett v. Progressive Eldercare Servs. - Saline, Inc.*, 2019 Ark. App. 201, 575 S.W.3d 426.

Here, appellant acknowledges that the intent of the legislature in crafting this statute was to encourage the prompt payment of no-fault insurance claims. *See Roy v. Farmers & Merchs. Ins. Co.*, 307 Ark. 213, 819 S.W.2d 2 (1991). In that regard, the legislature provided a finite amount of time for an insurer to review a claim and either oppose it or pay it. If that time period expires without payment of the claim, penalties are imposed in the form of attorneys' fees, 12 percent penalty, and pre- and postjudgment interest. Consistent with this interpretation, we conclude that the time period for payment should be uniform in every case, which we find corresponds with the mailing date being the operative date.

Other states considering similar issues have also acknowledged the importance of providing certainty in dealings between the parties and ensuring the prompt resolution of claims. In *Morrison v. Public Service Co. of North Carolina*, 643 S.E.2d 58, 62 (N.C. Ct. App. 2007), the North Carolina Court of Appeals concluded that a payment pursuant to a workers' compensation settlement agreement is considered timely when payment is tendered

9

or deposited in the mail. Likewise, in *LeVan v. Independence Mall*, 940 A.2d 929 (Del. 2007), the Delaware Supreme Court considered the circumstances under which payment of a workers' compensation claim has been timely made. It adopted the "date of mailing," conditioned upon a negotiable check mailed and ultimately received, as the operative date, noting that such a conclusion would create a bright line rule so that "all parties can operate with predictability"). *LeVan*, 940 A.2d at 934.

Also similarly, the Louisiana Court of Appeals, in discussing the competing statutory interpretations of a medical payment statute similar to our own, observed:

> The mailing date is under the control of the responsible insurer and, therefore, provides a predictable termination point to the claim-review process. Conversely, the delivery date is subject to a number of variables beyond the control of the insurer and is not as easily ascertainable in advance. Furthermore, by placing a check in the U.S. mail properly addressed to the insured and bearing adequate postage, the insurer relinquishes possession and control over the check and is no longer "opposing" that undisputed portion of the claim. At that point, the risk of any bad faith in opposing the undisputed portion of the claim, which the statute seeks to deter, is nonexistent, and the statute has achieved its purpose.

*Schexnaildre v. State Farm Mut. Auto. Ins. Co.*, 184 So.3d 108, 115 (La. Ct. App. 2015).

We find this reasoning persuasive. An insurer relinquishes control over a check once it is placed in the mail. That is, it has no control over the timing of its delivery by the U.S. Postal Service and no control over what happens once it reaches its destination. At the extreme, a dishonest insured could simply deny receipt until after the thirty-day time limitation has passed in order to collect penalties and interest. Moreover, if delivery is the set mark, the insurer would be required to implement different processing deadlines for each individual claim depending on the time of year (e.g., prolonged delivery times during certain

holidays) and location of the insured. This cannot be what our legislature intended. Accordingly, we accept the more certain and predictable mailing date as the date by which a claim is "paid" pursuant to the statute.

Here, State Farm presented evidence that the check was issued and mailed to Mejia's counsel on August 16, 2023—within the thirty-day window. Mejia provided no substantive proof to the contrary. Thus, payment was timely made, and the circuit court's grant of summary judgment was appropriate.

For the foregoing reasons, we affirm.

Affirmed.

KLAPPENBACH, C.J., and BROWN, J., agree.

*Ken Swindle*, for appellant.

*Munson, Rowlett, Moore & Boone, P.A.*, by: *Zachary Hill*, for appellee.

11