# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3433

_____

FutureFuel Chemical Company

*Plaintiff - Appellant*

v.

Lonza, Inc.

*Defendant - Appellee*

_____

No. 13-1396

_____

FutureFuel Chemical Company

*Plaintiff - Appellant*

v.

Lonza, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

_____

Before WOLLMAN and SHEPHERD, Circuit Judges, and WEBBER,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

FutureFuel Chemical Company (FFCC) appeals the district court's[2] grant of summary judgment on its claims of breach of contract and promissory estoppel against Lonza, Inc. (Lonza).  FFCC also appeals district court orders denying FFCC's belated request for a jury trial, concerning the unsealing of the court record, and awarding attorney's fees to Lonza.  For the reasons explained below, we affirm the grant of summary judgment to Lonza, we dismiss as moot FFCC's claim that the district court abused its discretion in denying FFCC's motion for jury trial, we also dismiss FFCC's appeal as it pertains to the unsealing of the record for lack of appellate jurisdiction, and, finally, we affirm the district court's grant of attorney's fees in this case.

I.

In 2008, Lonza supplied advanced pharmaceutical ingredients to the pharmaceutical industry.  One of its products was trityl losartan (TTL), which Lonza supplied to Merck Pharmaceuticals.  Lonza used Diethoxymethane (DEM), a solvent,

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

in its manufacture of TTL. In 2008, Lonza learned that it would need a new supplier for DEM. At the same time, FFCC began exploring the possibility of producing DEM and approached Lonza about supplying its needs for DEM. Lonza's representative immediately informed FFCC that its needs for DEM were volatile and depended greatly on the amount of recycled DEM it could recover through its production process.

FFCC proceeded with its plans to begin production of DEM. In the middle of 2008, Lonza representatives visited FFCC's facility in Arkansas and met with FFCC representatives. Again, FFCC learned that Lonza's need of DEM varied depending upon the success of its recycling and recovery program. After the visit, Lonza and FFCC began evaluating a potential supply arrangement for DEM. FFCC proposed that the two parties sign a Letter of Intent that described in broad terms a future agreement of the parties. FFCC claimed that it needed such an agreement to proceed with a $1.7 million capital expenditure to construct a DEM processing facility.

After further negotiations, FFCC and Lonza representatives signed a three-page Letter of Intent on August 25, 2008. Under the heading "Purpose," the Letter of Intent provided:

> Based upon our discussions concerning the storage and supply of [DEM] conducted since May 2008 and the information we have exchanged, we are entering into this Letter of Intent in order to develop an Agreement under which [FFCC] will store purchased DEM for [Lonza] and will additionally supply FFCC-manufactured DEM to Lonza in accordance with Lonza's specifications for the product.
>
> This Letter of Intent contemplates that the parties will negotiate and execute a definitive supply agreement (the "Agreement") on or before October 1, 2008. It is the intent of the parties to meet to begin preparation of the Agreement by August 31, 2008.

This Letter of Intent is intended to confirm our understanding of the principal terms and conditions of the transaction and our mutual willingness to proceed in good faith to work toward the execution of a definitive Agreement consistent with these terms.

Under the heading "Long Term Supply Strategy," the Letter of Intent provided:

FFCC agrees to configure and modify existing manufacturing equipment to a state necessary to produce DEM to the quality that meets the specifications outlined in Table 1.

Lonza agrees to purchase DEM from FFCC at the following volumes: 1,000 metric tons in 2009, 80% of its worldwide demand for 2010 and 80% of its worldwide demand for 2011. Lonza estimates that the expected DEM usage in 2009 is 1800 metric tons, and 900 metric tons in 2010 followed by 800 metric tons in 2011.

The Letter of Intent included a price/volume chart that established price per pound and price per kilogram based upon the amount of DEM purchased annually, with amounts ranging from more than 1250 metric tons annually to less than 400 metric tons annually.

After signing the Letter of Intent, the parties continued to negotiate for a long-term supply agreement. Negotiations continued with various draft supply agreements and counter proposals. In June 2009, almost a year after signing the Letter of Intent, Lonza informed FFCC that its projected demand for DEM had dropped to between 200 and 250 metric tons due to the success of its recovery process and because Merck had ordered less TTL than originally expected. In July 2009, Lonza made a "spot" purchase of 60 metric tons of DEM, however, FFCC charged Lonza a rate that exceeded the price listed in the Letter of Intent's pricing chart because FFCC considered the Letter of Intent to be dormant. In 2010, Lonza made another "spot" purchase of 79 metric tons of DEM, with FFCC again charging Lonza a price

exceeding that found in the pricing chart. Later in 2010, Merck withdrew its business from Lonza, and Lonza sold its TTL production facility.

FFCC initiated this action in Arkansas state court, asserting the Letter of Intent constituted a binding contract for Lonza to purchase 1000 metric tons of DEM in 2009 and claiming that Lonza had breached the contract. Alternatively, FFCC argued that promissory estoppel should apply. Lonza removed the case to federal court on the basis of diversity jurisdiction. The district court then granted Lonza's motion for summary judgment, holding (1) the Letter of Intent did not constitute a binding contract to purchase 1000 metric tons of DEM in 2009 and, thus, Lonza could not have breached the contract with FFCC, and (2) FFCC was not entitled to relief under the theory of promissory estoppel because it was unable to show that Lonza made a promise to purchase 1000 metric tons of DEM in 2009.

After the entry of summary judgment, the district court sua sponte notified the parties that it intended to unseal all documents the parties had filed under seal in the case and gave the parties 10 days to file objections. FFCC moved for reconsideration of the court's decision to unseal the documents. Before the district court could review FFCC's motion for reconsideration, however, FFCC filed its notice of appeal challenging the district court's grant of summary judgment. Because the case was on appeal and the district court no longer had access to the record material in question, the district court denied the motion for reconsideration without prejudice. The district court stated that FFCC could refile its motion for reconsideration within 15 days after this court issues its mandate. The documents in question remain under seal.

Also after the entry of summary judgment, Lonza moved for $105,865.61 in attorney's fees. Lonza indicated through its submitted billing records that it attempted to eliminate the hours worked on FFCC's promissory estoppel claim from the attorney's fees claimed. The district court granted Lonza's attorney's fees request

in full. Lonza also sought $6,840.40 in costs; the district court denied the costs request except for $350 in filing fees for removal of the action to federal court.

## II.

FFCC appealed the district court's grant of summary judgment and the district court's order indicating its intention to unseal the court's record. FFCC filed a second appeal challenging the district court's denial without prejudice of FFCC's motion to reconsider the proposal to unseal the documents and the district court's grant of attorney's fees to Lonza. We have consolidated these appeals.

There are four issues presented by these consolidated appeals. First, did the district court properly grant summary judgment to Lonza? This issue is broken down into two parts: whether there was a breach of contract or, alternatively, whether under the doctrine of promissory estoppel, Lonza should be estopped from reneging on a promise to purchase DEM. Second, if the grant of summary judgment was improper, did the district court abuse its discretion in denying FFCC's belated motion for a jury trial? Third, did the district court err in ordering the trial documents unsealed? Finally, did the district court err in awarding attorney's fees or in calculating the attorney's fees award?

### A. Summary Judgment

The first issue for consideration is whether the district court properly granted summary judgment in favor of Lonza on the issues of breach of contract and promissory estoppel. We review a district court's grant of summary judgment de novo, BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC, 706 F.3d 888, 893 (8th Cir. 2013), and we will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). We view all facts and make "all reasonable inferences in the light most favorable to the

nonmoving party." BancorpSouth Bank, 706 F.3d at 893 (internal quotation omitted). Both FFCC and Lonza agree that Arkansas substantive law applies to this diversity case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## 1. Breach of Contract

Under Arkansas law, "[t]he essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." Williamson v. Sanofi Winthrop Pharm., Inc., 60 S.W.3d 428, 433 (Ark. 2001). In determining "whether a valid contract was entered into," the Arkansas Supreme Court instructs that courts consider two legal principles: "(1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." Id. at 434. Thus, we are to use an objective test for determining whether there was mutual assent without consideration of the parties' subjective opinions. See Ward v. Williams, 118 S.W.3d 513, 521 (Ark. 2003). We are persuaded by two objective criteria: the language of the Letter of Intent and the parties' actions.

In this case, the best source for determining whether the parties mutually assented to a sales contract is the language of the Letter of Intent. See Arloe Designs, LLC v. Ark. Capital Corp., 2014 Ark. 21, 4 (2014). The language from the "Purpose" section of the Letter of Intent states, "we are entering into this Letter of Intent in order to develop an Agreement under which [FFCC] . . . will . . . supply FFCC-manufactured DEM to Lonza in accordance with Lonza's specifications for the product." Later, in the same section, the Letter of Intent provides, "that the parties will negotiate and execute a definitive supply agreement (the 'Agreement') on or before October 1, 2008." This language manifests that the Letter of Intent is a preliminary, non-binding proposal to agree. While later language established price

and quantity amounts and indicated that Lonza "agrees" to those terms, the language of the Letter of Intent and the ongoing negotiations between the parties over these terms demonstrates that there was no mutual assent. At best, the pricing and quantity terms memorialized the point from which the parties would continue negotiations toward an agreement. Further, there is nothing in the Letter of Intent to suggest that the parties contemplated being bound by the pricing and quantity terms until the agreement was reached. The Letter of Intent only expressed the parties' obligations to continue negotiations in a good faith attempt to reach a supply contract. Lonza upheld this obligation, although a contract ultimately could not be formed.

Further, an objective view of the parties' interactions also supports the district court's grant of summary judgment. Even with the proposed price and quantity chart memorialized in the Letter of Intent, when Lonza made two spot purchases of DEM from FFCC, FFCC charged Lonza a price that exceeded the price stated in the Letter of Intent. These transactions demonstrate the parties did not conduct their business in recognition of a valid contractual arrangement to buy and sell 1000 metric tons of DEM in 2009. Accordingly, the district court properly granted summary judgment to Lonza on FFCC's breach-of-contract claim because the parties did not reach a meeting of the minds as to all terms and, therefore, there was no contract formed.

## 2. Promissory Estoppel

Because Lonza never promised to purchase 1000 metric tons of DEM in 2009, FFCC cannot succeed on its promissory estoppel claim. "To prove promissory estoppel, a plaintiff must show that the defendant made a promise; that the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise; that the plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and that injustice can be avoided only by enforcement of the promise." Fairpark, LLC v. Healthcare Essentials, Inc., 381 S.W.3d 852, 859 (Ark. Ct. App. 2011). As explained above, the Letter of Intent merely manifested the

parties' intentions to negotiate towards a supply agreement. Nothing in the Letter of Intent or in the parties' conduct suggests that Lonza made a firm promise to purchase 1000 metric tons of DEM in 2009. The district court properly granted summary judgment on FFCC's promissory estoppel claim.

## B. Motion for Jury Trial

In light of our determination that summary judgment was properly granted in this case, the question of whether the district court abused its discretion in denying FFCC's belated motion for a jury trial is now moot. See Fed. R. Civ. P. 38, 39. We dismiss this issue.

## C. Unsealing of Trial Documents

In conjunction with its order granting summary judgment, the district court entered an order stating its intention to unseal all documents filed under seal in the case. The court granted the parties 10 days to file objections to the court's "*proposed* course of action regarding sealed documents." (Doc. 69 at 2 (emphasis added).) The district court noted that it had supervisory power over the court's records and that there was a presumption in favor of public access to court records. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 596, 598 (1978) (recognizing a "common-law right of access to judicial records" and that "[e]very court has supervisory power over its own records"). FFCC filed a Motion for Reconsideration objecting to the court's proposed action of unsealing the records and requesting that the district court conduct an individualized assessment of the material filed under seal. Before the district court ruled on the objections set forth in the Motion for Reconsideration and prior to the district court ordering the unsealing of the documents, however, FFCC appealed the grant of summary judgment. The district court then denied the Motion for Reconsideration without prejudice, stating that FFCC could renew the motion up to 15 days after this court decides the appeal and issues a mandate.

"The courts of appeal . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." See 28 U.S.C. § 1291. "Once a notice of appeal is filed, the district court is divested of jurisdiction over matters on appeal." State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1106 (8th Cir. 1999). However, "we have held that a district court retains jurisdiction over collateral matters, such as attorney's fees or sanctions, while an appeal is pending." Id. at 1107 n.3. "[T]he right of access to judicial records and documents is independent of the disposition of the merits of the case." Stone v. Univ. of Md. Medical Sys. Corp., 855 F.2d 178, 180 n.* (4th Cir. 1988). Thus, the district court was permitted to consider whether to unseal the record despite FFCC's filing of a notice of appeal in this case challenging the grant of summary judgment to Lonza, which was a final and appealable decision.

The district court has not fully considered FFCC's objections to the court's proposal to unseal the records, however, because it no longer has access to the sealed record that has been transmitted to this court. Thus, the district court has not yet made a final, appealable decision on the issue of unsealing the records. FFCC's notice of appeal as it pertains to the district court's proposed disposition of the sealed records is premature. This situation is analogous to those cases where the district court awards sanctions or attorney's fees but does not determine the amount of sanctions or fees at that time. See, e.g., Dieser v. Cont'l Cas. Co., 440 F.3d 920, 923-24 (8th Cir. 2006). The district court was clear that it was only proposing to unseal the records and would entertain objections to its proposal. Those objections were filed, but because the case was on appeal, the district court no longer had access to the materials for review. In denying the Motion to Reconsider without prejudice, the court again expressed its willingness to consider objections to its proposal to unseal the records. The district court has not yet entered an order unsealing the records, and therefore there is no final, appealable decision for this court to review. As we held in Dieser, because the notice of appeal was not taken from a final, appealable order,

the notice of appeal was ineffective to confer appellate jurisdiction on this Court.[3] Accordingly, we dismiss FFCC's appeal as it pertains to the issue of unsealing the court record.

## D.  Attorney's Fees

Finally, we consider whether the district court properly awarded attorney's fees to Lonza.  "We review the court's interpretation of state law de novo, and its decision to award attorney fees for an abuse of discretion."  Burlington Northern R. Co. v. Farmers Union Oil Co., 207 F.3d 526, 534 (8th Cir. 2000) (citations omitted). Because we have affirmed the district court's grant of summary judgment to Lonza, FFCC's argument that the reversal of summary judgment would justify our vacating the award of attorney's fees is no longer viable.  FFCC also argues that the award should be vacated because its action was not "primarily" a contract action and the promissory estoppel claim was at least equal to the breach-of-contract claim.

In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies.  See id.  "In any civil action . . . for . . . breach of contract . . . the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs."  Ark. Code Ann. § 16-22-308. When breach-of-contract claims are advanced along with other claims, "an award of attorney's fees to the prevailing party is proper only when the action is based primarily in contract."  Reed v. Smith Steel, Inc., 78 S.W.3d 118, 126 (Ark. Ct. App. 2002).  We agree with the district court that FFCC's primary focus was its claim that Lonza breached a contract with FFCC.  The first count of the complaint was for

---

[3]Although we lack jurisdiction over the issue of whether the district court may unseal the record because no final, appealable decision has been reached on that issue by the district court, "we are not barred from considering those decisions of the district court that are final" such as the grant of summary judgment and the award of attorney's fees.  See Cooper v. Saloman Bros., Inc., 1 F.3d 82, 85 (2d Cir. 1993).

-11-

breach of an express contract. Count II raised a claim of breach of an implied contract, and FFCC requested that it only be considered "in the event that it is found that an express contract was not formed." The promissory estoppel claim was set forth in Count III, and FFCC prefaced this claim with the request that the court only consider the claim if "it is found that neither an express contract nor an implied contract was formed and breached by Lonza." In short, FFCC's primary theory before the district court was that the Letter of Intent formed a contract to purchase 1000 metric tons of DEM in 2009. Therefore, the district court correctly determined that the award of attorney's fees was appropriate in this case pursuant to section 16-22-308.

FFCC has also challenged the amount of attorney's fees awarded by the district court. The Arkansas Supreme Court has noted factors for courts to use to determine the appropriate amount of attorney's fees.

> [A]lthough there is no fixed formula in determining the computation of attorney's fees, the courts should be guided by recognized factors in making their decision, including the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

Chrisco v. Sun Indus., Inc., 800 S.W.2d 717, 718-19 (Ark. 1990).

Here, the district court performed a detailed review of each of these factors and awarded $105,865.61 in attorney's fees. Although FFCC raises objections to certain aspects of the district court's analysis of the Chrisco factors—for example, claiming

that the hourly rate claimed by the Arkansas attorney should not have exceeded the hourly rate claimed by the Philadelphia attorney—FFCC fails to demonstrate any way in which the district court's analysis could be deemed an abuse of its discretion. Cf. Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1012 (8th Cir. 2004) (holding district court commits abuse of discretion in determining attorney's fees for ERISA case "when the district court commits a clear error of judgment in weighing the relevant factors" (quotation omitted)). "The district court is in a better position than the Court of Appeals to assess the course of the litigation and the quality of work performed by the attorneys." Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1072 (8th Cir. 2000). Accordingly, we affirm the district court's award of $105,865.61 in attorney's fees.

### III.

We affirm the district court's grant of summary judgment and its award of attorney's fees. We dismiss as moot the jury trial issue and dismiss for lack of appellate jurisdiction FFCC's appeal as it pertains to the unsealing of the record.

_____