Cite as 2022 Ark. App. 423

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-21-483

| | |
|---|---|
| MARK B. CHADICK; AND BEVERLY CHADICK, INDIVIDUALLY AND AS TRUSTEE OF THE BEVERLY ANN CHADICK REVOCABLE TRUST<br>APPELLANTS | Opinion Delivered October 26, 2022<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-19-1009] |
| V. | HONORABLE RALPH C. OHM, JUDGE |
| DANIEL WALTERS<br>APPELLEE | REVERSED |

## STEPHANIE POTTER BARRETT, Judge

The issue in this case is whether the parties to this action, appellant Beverly Chadick, individually and as trustee of the Beverly Ann Chadick Revocable Trust ("Chadick"), and appellee, Daniel Walters, reached a full and complete settlement agreement of their claim to quiet title. The Garland County Circuit Court determined that they did and entered an order compelling execution of the settlement agreement. On appeal, Chadick argues that the circuit court erred when it determined that the parties had reached an enforceable settlement agreement. We agree with Chadick, and we reverse the circuit court's finding that an enforceable settlement agreement existed.

Chadick and her ex-husband, Mark Chadick,[1] filed a petition in the Garland County Circuit Court on August 2, 2019, to quiet title in the real property at issue, seeking a declaration that a purported easement over their property allegedly held by Walters was invalid. Walters answered and filed a counterclaim asserting that he had a prescriptive easement or an easement by necessity over the Chadick property.

The parties entered into negotiations to resolve the lawsuit—Walters would purchase Chadick's property, thus negating the need for an easement. Chadick's attorney prepared an initial real-estate-purchase agreement and forwarded it to Walters's attorney for review on December 18, 2020, noting he did not yet have Chadick's approval as to the terms of the agreement, which included that Walters would purchase the property from Chadick for $330,000. Paragraph 11 of the agreement dealt with specific performance and stated that in the event either party breached the agreement, the other party would be entitled to specific performance.[2]

On Friday, March 5, 2021, Walters's attorney emailed Chadick's attorney, stating that "this is [Chadick's] last chance at $330,000," and he would ask the court on Monday to set the matter for final hearing as soon as possible. On March 8, Chadick's attorney replied

---

[1]Although divorced, Beverly and Mark owned the real property at issue as joint tenants with the right of survivorship. Mark died on August 15, 2019. Beverly created the Beverly Ann Chadick Revocable Trust, naming herself as trustee, on March 27, 2020, and she deeded the property to the trust on April 9, 2021.

[2]The agreement further stated that it was deemed to have been jointly prepared by the parties, with no uncertainty or ambiguity to be interpreted against either party by reason of its drafting the agreement.

that Chadick would need thirty days after closing to remove the contents of the manufactured home on the property, and he would insert the delayed-possession provision and have Chadick sign the agreement. The second version of the agreement sent by Chadick's attorney did not contain the thirty-day continued-occupancy provision, but changes were made that shifted all of the closing costs and expenses, including Chadick's attorney's fees, to Walters (the first agreement shared certain costs and had each party paying their own attorneys' fees); denied Walters the right to transfer or assign his rights under the agreement; and provided that if Walters defaulted, Chadick was entitled to specific performance, but if Chadick defaulted, Walters was entitled only to a refund of his earnest money, if any, as his sole remedy.

On Tuesday, March 16, 2021, Chadick's attorney sent a copy of the third version of the real-estate-purchase agreement, which had been signed by Chadick, to Walters's attorney. All the provisions contained in the second version of the agreement remained the same, with an additional provision added that allowed Chadick to occupy the property for a period not to exceed thirty days after closing.

On Thursday, March 18, 2021, Walters's attorney noted that in addition to the insertion of the delayed-possession provision, paragraph 11 concerning specific performance had also been changed to allow only Chadick specific performance in the event of a default by Walters, but Walters would only be entitled to a refund of his earnest money in the event of a default by Chadick. Walters's attorney stated that provision was not acceptable, and

3

Walters agreed to the original terms of the agreement, which required specific performance of both him and Chadick.

A hearing was held on May 26, 2021. At that hearing, the circuit court stated that "actually, there was an agreement reached. You're just having trouble coming to the right terms, as far as the document or the agreement once you put it on paper." The court asked Walters's attorney if Walters was "okay" with the contract, except for the language dealing with specific performance; Walters's attorney told the court that yes, Walters wanted each party to be held to specific performance so that Chadick would not be able to back out of the agreement if she changed her mind. The circuit court held that the agreement had already been signed by Chadick; it was going to use that document as the guide for the agreement between the parties; and while it was not going to require the parties to amend the document to include the specific-performance language, it was going to enforce the contract, and if Chadick tried to back out of the contract for anything other than a legitimate excuse, she would be held in contempt. The court stated, "[B]asically, you have an agreement, and that agreement is for three hundred thirty thousand dollars we're gonna buy some property. I want to see that go forward." The court further indicated that there were some liens on the property that it did not initially understand, and if Chadick could not deliver fee-simple title, it would not expect Walters to be required to go forward, and the parties could return to court to argue about an easement at that point, but it expected Chadick to do everything within her power to eliminate any liens on the property and to deliver fee-simple title. The court indicated that it expected the parties to act in good faith,

4

but it did not expect Walters to buy lien-encumbered property. The circuit court entered an order on June 15, finding that the parties had reached an enforceable settlement agreement and ordering the parties to execute the version of the real-estate-purchase agreement Chadick's attorney had sent to Walters's attorney on March 16. Chadick filed a notice of appeal on July 15, appealing the June 15 order.

On June 29, Walters's attorney moved to amend the June 15 order, arguing that the June 15 order omitted language from the circuit court's ruling in the May 26 hearing. Walters specifically asked that the circuit court enter an order not only ordering the parties to execute the real-estate-purchase agreement, but also stating that (1) the court will hold both parties to strict compliance of the terms of the agreement; (2) if either party backs out of the agreement for a reason that is not legitimate, the court will find the party in contempt; (3) if Chadick cannot deliver fee-simple title, then Walters will not be expected to go forward with the sale of the property; (4) the court expected Chadick to do everything in her power to eliminate any liens on the property and deliver fee-simple title so that Walters can buy the property without any liens on it; and (5) the court expects both parties to act in good faith. Attached to the motion was a proposed order and a signed copy of the March 16 version of the agreement with notations on the agreement by Walters's attorney that Walters would agree to pay a reasonable attorney's fee to Chadick's attorney only for the negotiation and preparation of the agreement and the consummation of the closing.

Chadick filed a response to Walters's motion to amend the June 15 order and moved for reconsideration, arguing that Walters's motion to amend the June 15 order should be

denied, and the June 15 order finding that the parties reached an enforceable settlement agreement should be set aside. Chadick argued that Walters altered the March 16 version of the agreement by striking through the provision obligating him to pay all of her attorney's fees and attaching that revised version to his proposed amended order. Chadick argued that the parties did not now have an agreement and that they never had an agreement. Chadick pointed out that in a March 18, 2021 email to her counsel, Walters's counsel stated that the revised specific-performance provision was not acceptable, and the parties would not have a settlement unless the provision was removed; and that Walters acknowledged, in a March 24, 2021 letter to the court, the absence of an enforceable agreement and requested a trial setting. Chadick contended that the parties had never reached an agreement on all material terms and asked the circuit court to deny Walters's motion to amend, to set aside the June 15 order, and to set the matter for trial.

Walters filed a reply to Chadick's response to his motion to amend the June 15 order and her motion for reconsideration, arguing that the case was settled on November 3, 2020; Chadick has been delaying the sale and conveyance to him ever since due to "seller's remorse"; and Chadick had changed the specific-performance language in paragraph 11 to require that only Walters would be held to specific performance. Walters stated that the June 15 order Chadick's attorney drafted omitted the details of the circuit court's ruling, including that all parties were held to specific performance; there would be a finding of contempt if Chadick backed out of the agreement without a legitimate excuse; and that all parties had to act in good faith. Walters alleged that Chadick sent the order to the circuit

6

court for its signature without allowing his counsel to review it before it was signed and filed, thus necessitating the motion to amend the order to add the details of the circuit court's ruling. Walters stated that if the change requiring that he would pay a reasonable attorney's fee to Chadick's attorneys would prevent the sale from closing, he would resign the agreement without that language and pay Chadick's attorney's fees for drafting the agreement and closing the sale. Walters's counsel explained that the specific-performance provision was important because Chadick kept trying to back out of the agreement, and the circuit court resolved the issue by ruling that all parties would be held to specific performance, and the agreement would be enforced. Walters argued that Chadick's motion for reconsideration should be denied.

On August 12, 2021, the circuit court entered Walters's proposed amended order containing the details requested by Walters. The signed agreement was attached to the order. The change stating that Walters would pay a reasonable attorney's fee was struck by the circuit court. Chadick filed an amended notice of appeal on August 17, appealing both the June 15 order and the August 12 amended order.

In *Terra Land Services, Inc. v. McIntyre*, 2019 Ark. App. 118, at 12–13, 572 S.W.3d 424, 432 (citations omitted), this court held:

> The law favors amicable settlement of controversies, and courts have a duty to encourage rather than discourage compromise as a method of resolving conflicting claims. Nevertheless, a settlement is contractual in nature, and in order to be legally valid, it must possess the essential elements of a contract. The essential elements of a contract are (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligation. A court cannot make the parties' contract, but instead can only construe and enforce that contract the parties have

7

made. There must be a meeting of the minds in order to have a valid contract, using objective indicators; if there is no meeting of the minds, there is no contract. Whether there is a meeting of the minds is a question of fact, and the circuit court's findings of fact will not be reversed on appeal unless they are clearly erroneous.

Both parties must manifest assent to the particular terms of the contract. *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 289 S.W.3d 466.

Here, the question is whether there was a meeting of the minds as to all terms of the contract. Chadick argues there was not; Walters argues that Chadick has tried to create an unresolved issue but that the circuit court saw through that and found that the parties had an enforceable settlement agreement.

When Chadick's attorney shifted all of the costs to Walters, including all of Chadick's attorney's fees, Walters's attorney told the circuit court that Walters had not agreed to pay all of Chadick's attorney's fees. However, Walters's attorney stated at the hearing on the motion for reconsideration that Walters would pay the attorney's fees if that meant the sale would occur. The parties were renegotiating terms even after the circuit court ordered the parties to sign the agreement—a clear indication that there was no meeting of the minds as to all of the terms of the contract.

Furthermore, in the first draft of the agreement, the specific-performance clause provided, in pertinent part, that "in the event either party wrongfully fails or refuses to perform its obligations hereunder in breach of this Agreement, the other party shall be entitled to the remedy of specific performance. . . ." After the parties agreed that Chadick could insert a delayed-possession provision in the agreement, Chadick's attorney unilaterally

8

changed the specific-performance provision to state, "If Buyer fails to fulfill any of its obligations hereunder, Seller shall be entitled to specific performance of the Agreement. If Seller fails to fulfill its obligation hereunder, Buyer shall be entitled to a refund of the Earnest Money, if any, as its sole remedy." Walters's attorney informed Chadick's attorney that that change was unacceptable.

The version of the agreement Chadick signed, which was the one the circuit court ordered the parties to execute, contained the provision allowing the remedy of specific performance only to Chadick, which was unacceptable to Walters. Clearly, there was no meeting of the minds between the parties regarding the specific-performance provision. However, the circuit court ordered the parties to execute the contract containing the specific-performance provision that Walters found unacceptable, and in its amended order, the circuit court added additional terms to the agreement, holding that if either party attempted to back out of the agreement for any reason other than a legitimate excuse, that party would be found in contempt. A court cannot make the parties' contract but instead can only construe and enforce that contract the parties have made. *Terra Land Servs.*, *supra*. In the amended order, the circuit court added an additional requirement by holding both parties to specific performance, which it cannot do. The circuit court can only enforce the parties' contract as written. Chadick did not agree to be bound by specific performance in the event she defaulted on the agreement—that was a provision added by the circuit court. Because the parties did not agree on all the terms of the agreement, there was no meeting of the

9

minds. Therefore, there was no enforceable contract, and the circuit court was clearly erroneous in finding an enforceable contract existed.

Reversed.

HARRISON, C.J., and MURPHY, J., agree.

*Hyden, Miron & Foster, PLLC*, by: *James L. Phillips*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Scott G. Lauck*, for appellee.