# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2450
_____

Just Funky, LLC

*Plaintiff - Appellant*

v.

Think 3 Fold, LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: April 15, 2025
Filed: July 1, 2025
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

This appeal encompasses several business disputes between Just Funky, LLC and Think 3 Fold, LLC. Just Funky contends that Think 3 Fold breached a contract for the purchase of a large amount of plush toys. Think 3 Fold asserts that no such contract was formed but that the parties had entered into a separate sales contract for

a smaller amount of plush toys. The district court[1] ruled in favor of Think 3 Fold. Finding no reversible error, we affirm.

## I. Background

Just Funky is an Ohio company that manufactures fandom-type goods. Think 3 Fold is an Arkansas toy company. The parties decided to work together in 2020 when Think 3 Fold won a bid to supply plush toys to Walmart. Just Funky would manufacture and sell plush toys to Think 3 Fold, and Think 3 Fold would in turn sell the plush toys to Walmart. The parties' business relationship—while initially productive—later turned contentious. We describe here the sequence of events that spawned multiple lawsuits in several jurisdictions.

### A. The 2021 Purchase Orders

In November and December 2021, Think 3 Fold issued four purchase orders to Just Funky for a total of 256,748 plush toys at $7.00 per unit. Each purchase order, however, stated that "[p]ricing [was] not finalized." To negotiate pricing, Alison Biggers—one of Think 3 Fold's members—and Raj Arora—one of Just Funky's members—began discussions. On February 8, 2022, Biggers emailed Arora that Think 3 Fold could not exceed $7.50 per unit because the company had committed to a $15 retail price with Walmart. Arora countered with a price of $9.50 per unit. Biggers told Arora that Think 3 Fold could only agree to a price of $9.50 if Walmart agreed to increase the retail price to $20. On February 15, Biggers emailed Arora that the parties should place the orders on hold pending confirmation from Walmart.

The next day, Arora emailed Biggers that Just Funky would consider the purchase orders to be cancelled unless Biggers responded "differently by 11 AM

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

EST tomorrow morning." The following morning, Arora emailed Biggers that Just Funky would "proceed with other avenues to sell the product." Biggers responded that Think 3 Fold's "intent ha[d] always been to honor [the] existing [purchase orders]" but that Just Funky's pricing had changed. Arora reiterated that Just Funky considered the purchase orders to be cancelled and that, if Think 3 Fold did not wish for the purchase orders to be cancelled, Think 3 Fold needed to issue revised purchase orders. On March 7, Biggers emailed Arora that she "had hoped to work toward a solution but given communications . . . I think we should pause for now." Arora responded: "Please clarify so we can resolve any miscommunication. I am happy to get on a call with you to discuss and resolve the plush order situation." However, there is no evidence to indicate that the parties resolved the purchase order matter at that time.

## B. The Loan

Just Funky did not merely serve as a vendor of plush toys to Think 3 Fold. Just Funky also served as a creditor. In December 2021, while the purchase orders were being discussed, Think 3 Fold expressed interest in receiving a loan from Just Funky. Just Funky agreed to provide a loan, and the parties executed a secured convertible promissory note ("the Note") with a line of credit up to $3,000,000. Pursuant to the terms of the Note, Think 3 Fold was required to make weekly payments on the Note. As security for the loan, Think 3 Fold granted Just Funky a security interest in its assets. Think 3 Fold's members also executed a separate agreement in their personal capacities to guarantee repayment of the loan.

Think 3 Fold accessed $944,347 of the $3,000,000 in December 2021. However, Think 3 Fold failed to make the required January payments. On February 2, 2022, Just Funky issued a notice of default to Think 3 Fold, demanding full repayment of the loan and all associated interest within two business days. Think 3 Fold made a one-time payment of $25,000 on February 4 but failed to make further payments. Several weeks later, Just Funky filed suit against Think 3 Fold's members in the United States District Court for the Northern District of Ohio, seeking to

enforce the members' personal guaranty of the Note. Just Funky also filed the present case against Think 3 Fold in the United States District Court for the Western District of Arkansas, claiming breach of the Note.

The parties began settlement negotiations, and they reached an agreement in April 2022. Under the terms of the settlement agreement, Think 3 Fold would pay all outstanding principal and accumulated interest on the Note in the amount of $1,264,774.84 by April 18, 2022. In exchange, Just Funky would dismiss both of its pending lawsuits within ten business days of receiving the payment. The settlement agreement provided that untimely payment would constitute a material breach.

Instead of resolving the parties' claims, the settlement agreement complicated matters further. Think 3 Fold paid the settlement amount late. To account for the interest that accumulated due to the untimely payment, Think 3 Fold made an additional payment of $4,578.41. Just Funky accepted Think 3 Fold's payments but refused to dismiss the lawsuits, citing Think 3 Fold's late payment.[2]

### C. Attempts to Modify the Settlement Agreement

In an attempt to resolve all outstanding issues, Think 3 Fold and Just Funky attempted to modify the terms of the settlement agreement. Arora and Biggers discussed the terms for Just Funky to dismiss its pending lawsuits. One such term was for the parties to enter into an agreement for the sale of a large amount of plush toys ("the larger plush deal") and, once that amount was fully paid, Just Funky would dismiss its lawsuits. On April 27, 2022, Arora sent Biggers an email, which provided Think 3 Fold with several "option[s]" to consider for the larger plush deal. Each option proposed different unit prices for the plush toys: $7.25, $7.35, $7.50, $7.57, and $9.50. The following day, Biggers texted Arora: "I have been on with [Think 3

[2]Just Funky initiated a third lawsuit against Think 3 Fold in the Circuit Court of Cook County, Illinois, seeking to obtain a judgment against Think 3 Fold under the settlement agreement. Just Funky later dismissed that lawsuit.

Fold's attorney] since we talked. . . . As I said, this is really different than what we expected based on our conversations so it is taking longer to review. As you know, we are working to figure out the plush scenario." Biggers later texted Arora: "We have a good plan." She elaborated: "We will pay the $173k Monday. We will pay $1,014,788 (50% of the total plush amount) on Tuesday. We will pay the remaining 50% of plush by 5/10. We will use the original settlement and it will be updated with the new date and amount as discussed." Arora responded that he had to "thin[k] about it."

On April 29—while the parties were still discussing the terms of a modified settlement agreement—Arora called Biggers in a frantic state. He told Biggers that, while he knew the "plush [was] still being discussed," he had learned that some of Just Funky's plush toys were sitting at a port in Los Angeles. Arora proposed that Think 3 Fold immediately pay for 14,856 plush toys, or else the toys would be subject to high storage costs. Within twenty-four hours, Think 3 Fold wired Just Funky $111,420 for the 14,856 plush toys ("the smaller plush deal"). Just Funky, however, failed to deliver the plush toys and kept the $111,420.

Following the smaller plush deal, Arora and Biggers continued negotiating the terms of a modified settlement agreement. At times, it appeared that Arora and Biggers were nearing agreement. But subsequent communications made clear that the parties had misunderstood each other and no agreement was reached. Finally, on May 2, Arora and Biggers agreed that their attorneys should discuss and finalize the matter.[3] Shortly thereafter, Just Funky filed an amended complaint in the present case, adding new claims pertaining to the Note[4] and further alleging that Think 3 Fold had breached a contract for the larger plush deal. Think 3 Fold filed two counterclaims, only one of which is relevant here: Think 3 Fold alleged that Just

_____

[3]There is nothing to indicate that the attorneys ever reached an agreement.

[4]In November 2022, the district court granted Think 3 Fold's motion to dismiss Just Funky's claims pertaining to the fully paid original Note.

Funky had breached a contract for the smaller plush deal because it had kept both the $111,420 and the 14,856 plush toys.

Think 3 Fold moved for summary judgment on Just Funky's breach of contract claim, asserting that a contract had never been formed on the larger plush deal. Just Funky argued in response that the 2021 purchase orders and the parties' communications in April and May 2022 ("the April/May modified settlement agreement negotiations") evinced a contract for the larger plush deal. The district court first determined that the 2021 purchase orders had "no bearing" because the parties never reached a meeting of the minds on price and negotiations over the purchase orders broke down in February 2022. That left only the April/May modified settlement agreement negotiations. The district court found that the April/May modified settlement agreement negotiations showed that the parties considered the larger plush deal to be part and parcel of the parties' attempt to modify the settlement agreement. Because the parties could not agree on a payment schedule, price, and other remaining terms for executing a modified settlement agreement, the district court concluded that a contract also had not been formed for the larger plush deal. Accordingly, the district court granted summary judgment to Think 3 Fold on Just Funky's breach of contract claim.

The case proceeded to trial on Think 3 Fold's breach of contract counterclaim pertaining to the smaller plush deal. Just Funky claimed that, even if a contract had been formed, it was entitled to a setoff of $173,000 that it was purportedly owed by Think 3 Fold. Despite Just Funky's vague assertions regarding the basis for this setoff amount, the district court determined that the alleged setoff amount was a proposed amount that Think 3 Fold had offered to pay Just Funky as part of their negotiations for modifying the settlement agreement. Because the setoff amount was not an admission of debt owed, but rather an amount under discussion for settlement purposes, the district court rejected Just Funky's setoff defense. The district court then found that Just Funky had breached the contract for the smaller plush deal and entered judgment in favor of Think 3 Fold on its counterclaim.

## II. Discussion

On appeal, Just Funky asserts that the district court erred in granting summary judgment to Think 3 Fold on its breach of contract claim pertaining to the larger plush deal. Just Funky also asserts that the district court erred in rejecting its setoff defense with respect to the smaller plush deal.

We first address whether the district court erred in granting summary judgment to Think 3 Fold on Just Funky's breach of contract claim for the larger plush deal. We review *de novo* the district court's grant of summary judgment. *Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 710-11 (8th Cir. 2004). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The parties agree on the applicable law. Under Arkansas law, "the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." *FutureFuel Chem. Co. v. Lonza, Inc.*, 756 F.3d 641, 646 (8th Cir. 2014) (citation modified) (quoting Arkansas law). Arkansas law requires a "meeting of the minds as to all terms, using objective indicators." *Id.* Provided there was a meeting of the minds, a court's role is to "construe and enforce the contract that [the parties] have made." *Id.*

Just Funky asserts that a contract for the larger plush deal was formed based on the 2021 purchase orders and/or the April/May modified settlement agreement negotiations. We disagree. With respect to the purchase orders, purchase orders are generally considered to be offers. *Bio-Tech Pharmacal, Inc. v. Int'l Bus. Connections, LLC*, 184 S.W.3d 447, 450 (Ark. Ct. App. 2004). Here, Think 3 Fold's purchase orders to Just Funky offered a non-finalized price of $7.00 per unit. In the ensuing negotiations, Biggers told Arora that Think 3 Fold was willing to pay up to

$7.50 per unit. However, Just Funky did not accept Think 3 Fold's offer.[5] Instead, Arora countered with a price of $9.50. *See Younts v. City of North Little Rock*, 744 S.W.2d 715, 716 (Ark. 1988) (noting that a counteroffer operates as a rejection of an offer). Biggers did not accept the price of $9.50 but rather told Arora that they should place the orders on hold pending confirmation from Walmart that a $20 retail price was acceptable. As a result, Arora told Biggers that, if Think 3 Fold wished to proceed with the plush toy orders, it needed to issue revised purchase orders—to which Biggers replied that she believed they had agreed to a price of $7.00 per unit. Biggers later told Arora that they should pause communications. Thus, the undisputed evidence shows that no contract was formed based on the purchase orders because the parties did not reach a "meeting of the minds" on the price term. *Lonza*, 756 F.3d at 646.

Just Funky contends that a contract was formed despite the disagreement on price because Arkansas's Uniform Commercial Code provides that "[e]ven though one (1) or more terms are left open[,] a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Ark. Code Ann. § 4-2-204(3). We agree with the district court that "the problem is not that the parties left terms 'open,' but that they explicitly disagreed to certain terms." Discussions do not show that the parties agreed to proceed with the purchase orders, with the price term left open to be resolved at a later date. Rather, they show that price was an essential term and that, without agreement on that term, the parties would not proceed with the purchase orders. *See Chadick v. Walters*, 654 S.W.3d 837, 841-42 (Ark. Ct. App. 2022) (holding that the "circuit court was clearly erroneous in finding an enforceable contract existed" even though the parties had likely agreed to transfer and price of the property in question because "there was no meeting of the minds . . . regarding the specific-performance provision"). Indeed, Arora's email to Biggers stating that he considered the purchase orders to be cancelled reflects the parties' unwillingness to proceed without an agreement at the outset on the price term. We thus conclude

---

[5]Just Funky never signed the purchase orders.

that Just Funky never accepted Think 3 Fold's offer as delineated in the purchase orders.

Separately, Just Funky points out that a purchase order constitutes an acceptance rather than an offer when the parties' course of dealing indicates that the "purchase order was simply confirmation of a contract that had already been made." *Bio-Tech Pharmacal*, 184 S.W.3d at 451. Just Funky, however, is unable to point to any text message, email, or other piece of evidence which indicates that the parties entered into a contract prior to the issuance of the purchase orders and that Just Funky "was simply awaiting confirmation [of that contract] in the form of [Think 3 Fold's] purchase order[s]." *Id.* Instead, Just Funky merely states in its brief that this is an issue of fact to be decided at trial. By doing so, Just Funky incorrectly attempts to shift the burden to Think 3 Fold to disprove its claim, even though Just Funky bears the burden of presenting sufficient evidence to defeat Think 3 Fold's motion for summary judgment. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (delineating when a district court's grant of summary judgment is appropriate). Thus, we reject Just Funky's assertion that the purchase orders themselves constituted an acceptance of a contract previously formed between the parties. Rather, we conclude that the purchase orders have no relevance because Arora's express rejection of the purchase orders terminated Think 3 Fold's offer.

Turning to the April/May modified settlement agreement negotiations, Just Funky claims that a contract for the larger plush deal was formed during this time because an April 27 email from Arora to Biggers "confirmed the quantities, products, and anticipated delivery dates" for the larger plush deal. However, the district court found—and Just Funky does not dispute—that the discussions for the larger plush deal were part and parcel of the discussions concerning a modification to the settlement agreement. The parties never finalized the terms for modifying the settlement agreement because they could not agree on a payment schedule, price, and other remaining terms. *See Riley v. First State Bank*, 686 S.W.3d 44, 51 (Ark. Ct. App. 2024) ("The emails make clear that no meeting of the minds occurred because neither party had manifested assent to all the particular terms of the

release. . . . Simply put, there was still work to be done."). Because there was not a "meeting of the minds as to all terms," we conclude that the district court did not err in finding that no contract was formed for the larger plush deal. *Lonza*, 756 F.3d at 646. Accordingly, the district court's grant of summary judgment to Think 3 Fold was appropriate.

We next address whether the district court erred in rejecting Just Funky's setoff defense with respect to the smaller plush deal. After a bench trial, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Kaplan v. Mayo Clinic*, 847 F.3d 988, 991 (8th Cir. 2017). To establish a setoff defense, Just Funky must show, *inter alia*, that it had a right to collect against Think 3 Fold due to a "fully matured" claim.[6] *Vale v. Buchanan*, 135 S.W. 848, 849 (Ark. 1911). Just Funky asserts that it had a right to collect against Think 3 Fold because Think 3 Fold admitted to owing it $173,000. After reviewing the record, we agree with the district court that the $173,000 was an amount that Think 3 Fold offered to pay Just Funky as part of the discussions for a modified settlement agreement. As the district court found, "[b]ecause the parties never reached an agreement on a modified settlement, the $173,000 never became due." Thus, we conclude that the district court did not err in rejecting Just Funky's setoff defense.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[6]Just Funky cannot claim a right to collect based on the defaulted loan because that claim was extinguished by the district court when it found that Just Funky's payments satisfied the Note.